NEW YORK LIFE INS. CO. v. BOARD OF COM'RS OF CUYAHOGA COUNTY, OHIO.

NEW ENGLAND MUT. LIFE INS. CO. v. SAME.

(Circuit Court, N. D. Ohio, E. D. January 27, 1900.)

Nos. 5,969, 5,970.

1. STATUTE—RETROACTIVE EFFECT—LEGALIZING VOID MUNICIPAL BONDS.

Act Ohio April 21, 1898 (93 Ohio Laws, p. 172), which authorizes county commissioners who have issued and sold bonds, and with the proceeds purchased land, and erected a building thereon, in accordance with a statute which has thereafter been adjudged unconstitutional, to fulfill the equitable and moral obligation to the holders of such bonds by paying the amount of the principal and accrued interest thereon, and which further provides that, in case of their refusal on demand to make such payment, an action may be maintained against them to collect the amount of such principal and interest, as applied to a case in which county commissioners had, prior to the passage of the act, issued bonds, and expended the proceeds in good faith in the building of an armory for the use of the state guard, as authorized by a statute which was later adjudged void, as well as the bonds issued thereunder, on the ground that the building was for a general state purpose, gives a new right, rather than a new remedy for an existing right, and is within the prohibition of Const. Ohio, art. 2, § 28, against retroactive laws.

2. SAME—OHIO CONSTITUTION.

The liability sought to be imposed upon the county by the act is not so clearly and obviously one of natural justice as to take the act out of operation of the constitutional provision, if such consideration may have that effect, within the rule laid down by the Ohio supreme court, although it provides that on payment of the amount of the bonds the property may be used for county purposes. Both having acted equally in good faith, the county would discharge its full equitable and moral obligation by surrendering the property to the bondholders, and the act goes beyond such duty when it, in effect, requires the compulsory purchase of the property by the county, when it may be neither suitable nor needed for county purposes, nor worth its cost for such purposes.

3. FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The rules established by the highest court of a state for determining the validity of a statute under the state constitution are binding upon the federal courts.

These cases are submitted to the court on demurrers to the petitions.

Garfield, Garfield & Howe, for complainant New York Life Ins. Co.

Squire, Sanders & Dempsey, for complainant New England Mut. Life Ins. Co.

P. H. Kaiser and F. L. Taft, for defendant.

DAY, Circuit Judge. Except as to the amount sued for, the petitions are substantially alike. Omitting formal parts, the allegations of the petitions, which, for the purposes of the demurrers, must be taken as true, are, in substance: That the board of commissioners of Cuyahoga county, on or about the 13th day of May, 1893, pursuant to a provision of an act of the legislature of Ohio passed April 27, 1893 (90 Ohio Laws, p. 115), entitled "An act to authorize the commissioners of any county containing a city of the first class, second

grade, to borrow money and issue bonds therefor, for the purposes of building and furnishing a central armory in any such city, for the use of the Ohio National Guard, and procuring a site therefor," did, in accordance with the provisions of said act, and under the authority thereof, by resolution duly adopted and spread upon the minutes of the meeting then held, authorize and direct the issue and sale of the bonds of said Cuyahoga county in the sum of $225,000, for the purpose of raising money to erect and furnish an armory in the city of Cleveland for the use of the Ohio National Guard, and to procure a site therefor; said bonds to be dated July 1, 1893, to be in the sum of $1,000 each, payable in 25 years after date, and redeemable after 10 years from date, with interest thereon at the rate of 5 per centum per annum, payable semiannually upon presentation and surrender of interest coupons attached thereto, and to be denominated "Central Armory Bonds." That thereafter the defendant, pursuant to the authority given by section 2 of said act of April 27, 1893, duly issued, advertised, and sold all of said issue of bonds so authorized, in accordance with the said statute, and received therefor the sum of $227,065.05 in money, being par and accrued interest thereon from the date of said bonds to the date of their said sale, which said amount so received as the proceeds of said bonds was placed to the credit of the fund in the county treasury on account of which said bonds were issued and sold. That thereafter the said defendant, acting in pursuance of the act of the legislature under which the bonds were issued, and for the purposes contemplated in said act, and using the money for the purposes directed, purchased real estate in the city of Cleveland, in said county, taking legal title thereto in the name of said county, as a site for said proposed armory building, and erected thereon a building which has been substantially completed. That in the acquirement of said real estate and the construction of said building substantially all of the money from the issue and sale of said bonds has been expended. That the defendant, by such purchase, obtained and holds, in the name of the county, the legal title to said property so purchased and improved by the proceeds from said bonds, and has at all times and now does, exercise control and ownership over the same, and is in possession of said property and building, as well as of the moneys remaining, derived from the sale of said bonds. Plaintiffs further say that, after the issuing of said bonds, defendant, for the purpose of paying the interest thereon, and creating a sinking fund to redeem the same, did, in accordance with said act of April 27, 1893, cause to be levied a tax of one-tenth of one mill on each dollar of valuation of all of the property appearing upon the general tax duplicate of said county of Cuyahoga; that for a period of two years said tax was collected by the treasurer of said county, and the interest coupons attached to said bonds falling due on the 1st day of January and July in the years 1894 and 1895 were paid by the duly-authorized officials of said county. After the bonds had been so sold, and the proceeds expended for the purchase of said land, and after said building had been substantially completed, and after the said two years' coupons had been paid, legal proceedings were instituted by a taxpayer of said county of Cuyahoga, seeking to re-

strain the further levying of said tax and the payment of said bonds or the interest thereon, and thereafter such proceedings were had in such action that the act of the legislature of April 27, 1893, under which said bonds had been issued and said property so acquired, was, by the supreme court of Ohio, declared to be unconstitutional, and by the judgment of said court the said defendant and the county authorities of said county of Cuyahoga were enjoined from levying further taxes to pay the interest and principal of said bonds, which said judgment and injunction are still in effect; that of the moneys so collected by the levy of one-tenth of one mill aforesaid there remains unexpended in the hands of said defendant, in the "Central Armory Fund," so called, a balance of $17,755.30. Plaintiffs further aver that, by reason of the ruling of the supreme court aforesaid, and by reason of said injunction issued by the supreme court as aforesaid, the said defendant and the said county of Cuyahoga cannot now pay its obligations as evidenced by said outstanding bonds and coupons in the form in which the said county, by the proceedings aforesaid, undertook and agreed to pay to the holders of said bonds and coupons. Plaintiff avers in the one case that it is the holder of 145 of said bonds, and in the other case that it is the holder of 50 of said bonds, each being in the sum of $1,000; that plaintiffs purchased the bonds in the open market in the ordinary course of business, paying more than par therefor, and long prior to the beginning of the legal proceedings hereinbefore recited, and by the determination of which said officials of said county were enjoined from paying said bonds and interest thereon; that plaintiffs purchased said bonds and paid therefor in the one case the sum of $155,495.10, and in the other case the sum of $53,660, without knowledge or notice of any defect or irregularity in the same, and that the defendant herein, in so issuing said bonds and acquiring said property, acted in good faith; that said defendant still holds said property, which is now available to said county for general county purposes, and which is now used for county purposes. Plaintiffs aver that it is unconscionable and inequitable that the defendant should retain and hold and apply to county purposes the proceeds of said bonds and the property and building so acquired therewith without fulfilling its moral and equitable obligation to reimburse the plaintiffs for the bonds so held by them. Plaintiffs further say that on or about the 27th day of February, 1899, acting in accordance with the statutes of Ohio in such case made and provided, it made written demand upon the defendant herein to provide, as by law it was authorized to do, for reimbursing these plaintiffs in amounts equal to the principal and interest which had accrued upon the bonds respectively held by them, and to pay to the plaintiffs an amount equal to the principal and interest due upon said bonds upon a surrender of the same to the county for the purpose of cancellation; and that on or about February 28, 1899, the said defendant refused such demands so made by these plaintiffs, and notified these plaintiffs that it would not take any proceedings for the reimbursement of the plaintiffs, or the payment to them of the amounts of principal and interest so due to them by reason of the premises; that more than six months has elapsed since

these plaintiffs made such demand upon the defendant and its refusal to comply therewith. Plaintiffs bring the bonds by them held respectively into court for cancellation, and aver that by reason of the refusal of said defendant to make provision for the equitable and legal claims of the plaintiffs herein against the defendant, in accordance with the authority given by the statutes of the state of Ohio, particularly section 2834c of the Revised Statutes, rights of action have accrued to the plaintiffs to recover from defendant, as in an action for money had and received, an amount equal to the principal and interest represented by said bonds so owned and held by them respectively, and they pray judgment accordingly.

The act of the legislature of Ohio under cover of which these actions are brought (section 2834c of the Revised Statutes of Ohio) was passed April 21, 1898 (93 Ohio Laws, p. 172), and is as follows:

"Whenever the commissioners of any county, acting in accordance with an act of the legislature, have incurred obligations or have issued and sold bonds, and with the proceeds of such obligations or bonds have constructed an improvement or purchased land, and have wholly or partially completed a building thereon, and, after such proceeds have been so expended and the county thereby placed in the ownership and possession of such improvement or building, the statute under which such bonds were issued or obligations incurred has been, by the supreme court, declared unconstitutional and the county authorities enjoined from levying taxes to pay the interest and principal of such bonds or obligations, whereby the county has, with the proceeds of the bonds which it still retains, acquired such improvements or building, and, by reason of the unconstitutionality of the law under which it has acted, cannot pay its obligations outstanding in the form in which they were issued, such commissioners may, if they deem it for the best interest of the county so to do, fulfill the equitable and moral obligation of the county to reimburse the holders of said bonds or obligations to an amount equal to the principal and interest which has accrued thereon, and for the purpose of so doing, may issue and sell bonds of such county or borrow money in such amount and for such lengths of time and at such rate of interest as the commissioners may deem proper, not exceeding the rate of five per centum per annum, payable semi-annually, to be used in the reimbursement and payment of such equitable and moral claims and liabilities against such county: provided, that no such payment or reimbursement of any such moral or equitable claim shall be made of any claim that has remained due or unpaid for a longer period than ten years: provided, further, that should the county commissioners of any county, upon the written request of the holder of any such equitable claim against the county as in this section described, fail within six months after such demand to make provision for such claim under the provisions of this section, then, in such case, the holder of any such legal or equitable claim as in this section described against such county shall have a right of action in any court of competent jurisdiction to recover the amount of such claim and interest against such county at any time within a period of ten years from the time the cause of action accrues: provided, further, that the county commissioners may devote the building or improvement which the county has acquired in the circumstances mentioned in this act to any county purpose."

It thus appears that these actions are prosecuted for the purpose of recovering, under the section of the statute just quoted, an amount equal to the principal and interest of the bonds. The demurrers raise the question whether said act is in violation of the provisions of the constitution of the state of Ohio. From the allegations of the petitions it appears that the supreme court of Ohio, having been called upon to consider and determine the validity of the act under which the bonds were issued by the county commissioners and purchased by

the plaintiffs for the purpose of building an armory for the use of the Ohio National Guard in the city of Cleveland, decided that the act was passed in violation of the constitution of the state. The case in which this decision was rendered is Hubbard v. Fitzsimmons, 57 Ohio St. 436, 49 N. E. 477, decided January 26, 1898. An examination of the case will show that the supreme court of Ohio regarded the act of April 27, 1893, above recited, as void, because in violation of section 2 of article 12 of the constitution of the state, requiring taxes for general purposes of the state to be levied by a uniform rule on all the taxable property within the state, and held the erection of an armory for the use of the National Guard to be a general purpose of the state. The grounds of this decision are fully stated in the opinion. of the court given by Judge Shauck. It thus appears that the bonds were issued without authority, and were, consequently, void, and of no effect. It is not a case where the act could have been lawfully performed or done under legislative power theretofore existing. Thereafter, on the 21st of April, 1898, the leg'slature of Ohio passed section 2834c, Rev. St., already quoted. In this section it is undertaken to give validity to the claims of the plaintiffs, in the first place, by the voluntary action of the commissioners if they shall see fit to take it; if not, then giving a right of action six months after the county shall have failed upon written request to make provision for the payment of the claims of the persons holding the bonds. It is claimed that this section of the statutes is retroactive, and consequently in violation of section 28 of article 2 of the constitution. of 1851, which provides:

"The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state."

Is this statute retroactive, within the meaning of the constitution? It has been frequently decided by the supreme court of Ohio, and may be accepted as the law of the state, that the power to tax is derived primarily under the grant of the legislative power of the state to the general assembly, contained in article 2, § 1, of the constitution, which provides:

"The legislative power of this state shall be vested in a general assembly, which shall consist of a senate and house of representatives."

This general power, thus broadly conferred, is subject to certain limitations, one of which is contained in section 28, above quoted, providing that the general assembly shall have no power to pass retroactive laws. The supreme court of Ohio has ,had occasion to define the meaning of this section, and in one of its latest opinions upon this subject has said:

"However, every statute that is designed to act retrospectively is not retroactive within the terms of section 28 of article 2 of the constitution of 1851, which forbids the general assembly of this state to pass 'retroactive' laws. Whether a statute falls within the prohibition of this provision of the constitution depends upon the character of the relief that it provides. If it creates a new right, rather than affords a new remedy to enforce an existing right, it is

prohibited by this clause of the constitution of this state. Judge Story defines a retrospective, or retroactive law, as follows: 'Upon principle, every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new liability in respect to transactions or considerations already past, must be deemed retrospective.' Society v. Wheeler, 2 Gall. 104–139, Fed. Cas. No. 13,156. This definition was approved by this court in Rairden v. Holden, 15 Ohio St. 207. It was also adopted by the supreme court of the United States in Sturges v. Carter, 114 U. S. 511, 5 Sup. Ct. 1014, 29 L. Ed. 240." Commissioners v. Rosche, 50 Ohio St. 111, 33 N. E. 408, 19 L. R. A. 584.

While this statute, as to some causes of action, may be held to have a prospective operation in view of the use of the terms, "whenever the commissioners of a county having incurred obligations," etc., yet, as applied to this case, the transactions upon which it is to have operation preceded the enactment of the statute. The claims of the plaintiffs, as evidenced by the bonds, accrued to them before the passage of the act, and the statute must be given a retrospective construction if it is to apply at all to the claims of the plaintiffs. In Commissioners v. Rosche, supra, the supreme court of Ohio said that the test as to whether a statute falls within the provisions of this section depends upon the character of the relief it provides. If it creates a new right, rather than affords a new remedy to enforce an existing right, it is prohibited by this clause of the constitution of Ohio. It is argued with great force and ability by plaintiffs' counsel that this section 2834c is remedial in its character, and only gives a new remedy for an old right. Let us examine this contention. It appears from the allegations of the petitions that all parties to the original transaction acted in good faith. The county commissioners, assuming the act to be within the scope of the authority of the state legislature, with the proceeds of the bonds purchased a site, and practically completed a building designed to be used as an armory for the National Guard, before any legal steps were taken to test the constitutionality of the act. Under such circumstances the bondholders would have no right to recover the money thus invested by the commissioners under the supposed authority of the act. The money had been practically expended, and was no longer in the hands of the county commissioners, or subject to their control. The supposed law under which they had acted was no law, and the attempt to procure title to a site and a building in the county for those purposes was nugatory. While this is true, the county should not be permitted to hold the property in which the money of the purchasers of the bonds had been invested. It was said by Mr. Justice Field in Marsh v. Fulton Co., 10 Wall. 684, 19 L. Ed. 1043:

"The obligation to do justice rests upon all persons, natural and artificial, and, if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation."

But what is the measure of justice which the law will afford in such a case? Whatever the rights of the purchasers of the bonds while the money was still in the hands of the county commissioners, when the board, acting in good faith and by authority of a supposed law, has invested the money in a building, the right of the bondholders is not to have restitution of the money, because that is no longer

in the county's control, but they can follow the property and building into which the money has gone, and to this extent obtain restitution and compensation. This is the principle recognized in Chapman v. Douglass Co., 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378; Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442, 27 L. Ed. 238; Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132. An examination of the terms of this section 2834c discloses that the holders of the bonds in these cases are given the right to recover, not the property itself, or the value thereof, but the amount of their claims, evidenced by the bonds, with interest. This is undertaking to give, not a new remedy, but a new right, to the holders of these bonds, and attaches to the county a new obligation. This right did not exist in favor of the bondholders until the passage of this statute, nor prior thereto did any such liability rest upon the county. Applying the test laid down by the supreme court of Ohio in Commissioners v. Rosche, supra, this act is retroactive, within the meaning of this section of the constitution. It is claimed, however, and strenuously urged upon the attention of the court, that this statute is in furtherance of natural justice, and was enacted to enable the plaintiffs to enforce a just and equitable claim, and is not within the prohibition of the constitution of Ohio against retroactive laws, and a large number of Ohio cases have been cited in support of that contention. See State v. Hoffman, 35 Ohio St. 435; Board v. McLandsborough, 36 Ohio St. 227; Warder v. Commissioners, 38 Ohio St. 643; State v. Trustees of Richland Tp., 20 Ohio St. 362; Trustees v. Dillon, 16 Ohio St. 38; Rairden v. Holden, 15 Ohio St. 207; Trustees v. McCaughy, 2 Ohio St. 152. An examination of these cases will show that they arise under conditions of fact where the obligations of the county or town are clear and strong, admitting of no discussion as to the moral obligation to pay the claims in question. In such cases it may be conceded that the legislature can authorize one of the political subdivisions of the state to levy a tax to pay a demand not legally enforceable, but founded on moral considerations, or may even require that the levy shall be made for that purpose. This view of the law is taken by Judge Bradbury in giving the opinion in Board of Education v. State, 51 Ohio St. 531, 38 N. E. 614. While this is true, this doctrine has always been applied to cases of peculiar hardship, raising strong moral obligation for the payment of claims. After the cases above referred to were decided, the question came before the court in Commissioners v. Rosche, supra. In that case it appears that Rosche Bros. were—

"Tanners, engaged, in the city of Cincinnati, in manufacturing leather from the skins of animals. In the years 1875, 1876, 1877, and 1878 the auditor of state provided blank forms to be used by the assessors in the several townships and wards of the municipalities of the state, to secure a uniform listing for those years of the personal property within the state subject to taxation, and upon this form promulgated certain instructions to aid the assessing officers and property owners to determine what property should be listed, and the proper method of listing it. This form, with the instructions printed upon it, was provided and furnished to the county auditors of the several counties throughout the state. Among the instructions thus given by the auditor of state was the following: 'Manufacturers must include the average value of raw material used and on hand in the manufactured and unmanufactured

articles.' Pursuant to these instructions, the defendants, in the years above named, listed not merely the average monthly value of the raw material 'purchased, received, or otherwise held' to be used in manufacturing, but included also the average value of the raw material in manufactured articles on hand or in process of being manufactured. The defendants in error in the original action sought to recover the taxes that they had paid upon the raw material that was in the manufactured or partly manufactured articles on hand. These taxes were all paid, and all the assessments, except that of 1875, were made after it had been held by the supreme court commission that raw material in manufactured articles was not taxable. Sebastian v. Candle Co., 27 Ohio St. 459." "In 1881 the defendants in error, and a number of others in like situation, including Eckstein, Hill & Co., manufacturers of white lead, etc., filed claims with the county auditor of Hamilton county, for the refunder of the taxes thus paid by them respectively. Payment being refused, Eckstein, Hill & Co. brought an action in the court of common pleas of Hamilton county against the county commissioners of that county to enforce their claims. They prevailed in that court, whereupon the county commissioners instituted proceedings in the district court of Hamilton county to reverse the judgment of the court of common pleas. The district court reversed the judgment of the court of common pleas upon the ground that in law there was no right of recovery (Commissioners v. Eckstein, 4 Wkly. Law Bul. 989), which judgment of the district court was afterwards affirmed by the supreme court. In the year 1890, after these adverse decisions had been made, and relief denied to parties situated like the defendants in error, the general assembly passed the following act (87 Ohio Laws, 212): 'That if in any county containing a city of the first grade of the first class, the county or state auditor has sent by any assessor to any person, firm or corporation a blank upon which to return property for taxation under section 2742 of the Revised Statutes of Ohio, with instructions in said blank showing and directing such person, firm or corporation how the said return should be made of such property for taxation, which instructions have been erroneous and contrary to the said section 2742, and such person, firm or corporation has made return in accordance with such erroneous instructions, and by reason of following said erroneous instructions, said person, firm or corporation has returned for taxation, and paid taxes upon property which, under the said section 2742 should not have been listed, such listing and payment shall be held to be involuntary, and the court of common pleas of said county, in an action brought by any such person, firm or corporation against the county commissioners of said county, and upon lawful proof of any such involuntary payment, shall render judgment for the recovery of the amount of said payment, but without interest or costs; and thereupon said county commissioners shall cause the same to be paid out of any unexpended funds belonging to said county in the county treasury. Provided, however, that no taxes so erroneously paid shall be so sued for and refunded by said county commissioners unless a claim in writing, duly verified by such person, firm or corporation, has been filed and presented therefor with the county auditor of such county within six years from the time of payment of such erroneous taxes.' "

It was contended in that case that the act was not retroactive, because it was based upon a strong moral obligation, and was in furtherance of equity, and, therefore, within the Ohio decisions which it was claimed had supported similar acts. Passing upon that feature of the case, the court said, upon page 113, 50 Ohio St., page 410, 33 N. E., and page 586, 19 L. R. A.:

"Counsel contend that the statute is in furtherance of natural justice, and that the clause of the constitution under consideration does not prohibit retroactive laws of that character. Lewis v. McElvain, 16 Ohio, 347; Trustees v. McCaughy, 2 Ohio St. 152; Acheson v. Miller, Id. 203; Burgett v. Norris, 25 Ohio St. 308." "To uphold a statute on this ground, where it seeks to create a liability upon a past transaction, where none existed when it occurred, if it can be done at all, the natural justice of the object sought to be accomplished should be indisputable."

This must be taken, I think, as the latest declaration of the supreme court of Ohio upon this subject, and the court therein say that to uphold a statute on this ground, where it seeks to create a liability upon a past transaction, "if it can be done at all, the natural justice of the object sought to be accomplished should be indisputable"; and in that case the court says that the justice of requiring the taxpayers of Hamilton county to refund the entire tax which had been distributed in the state and city where the taxes had been collected upon an erroneous instruction of the auditor of state is a question upon which minds may well differ. Applying this rule to the present case, is there such clear and strong equity in favor of the holders of these bonds as against the taxpayers of Cuyahoga county, represented by the board of county commissioners, that the act should be held to be one for this reason not falling within this provision of the constitution? The petitions aver that the building erected from the proceeds of the bonds is capable of use for county purposes, and that it is now being so used by the county. The act in question, however, does not make the right to recover turn upon any such consideration. Its provisions are available to the holders of such bonds when the commissioners have issued bonds, and with the proceeds thereof have constructed an improvement, or purchased land, and wholly or partially completed a building thereon, thereby placing the county in possession and ownership of such improvement or building. It is true the statute provides that, when the claims of the bondholders have been satisfied, as required by the act, the county commissioners may devote the building so acquired to any county purpose; but the right of recovery is not predicated upon the kind or character of the building, the necessity of its use, or adaptability for the purposes of the county. If land had been purchased, and a building wholly or partially completed thereon, the county is compelled to pay the full amount of the bonds as issued, irrespective of the value of the building, the necessities of the county, and in no wise depending upon the character or fitness of the building for county purposes. It is practically a compulsory purchase, for the amount of the bonds, of the building, for the use of the county. It does not appear that any such building was desired for the uses of Cuyahoga county. It does appear that it was erected for the purposes of a state armory. Ordinarily, when a county desires to erect a county building, the question as to the desirability of such improvement, if it exceeds in cost the sum of $10,000, must be submitted to a vote of the electors of the county. Rev. St. Ohio, § 2825, provides:

"The county commissioners shall not levy any tax, or appropriate any money, for the purposes of building public county buildings, purchasing sites therefor, or for lands for infirmary purposes, or for building any bridge, except in case of casualty, and except as hereinafter provided, the expense of which shall exceed ten thousand dollars, without first submitting to the voters of the county, the question as to the policy of building any public county building or buildings, or for the purchasing sites therefor, or for the purchase of lands for infirmary purposes by general tax."

The value of this building for other than armory purposes may be very much less than the claims of the plaintiffs secured to them under

the terms of section 2834c. The county was not undertaking to acquire a building for county purposes. The bonds were distinctly "armory bonds." The purpose, well understood by all parties, was to secure a site and build an armory for the Ohio National Guard. The case does not involve a statute which creates a liability upon a past transaction, the natural justice of the object sought to be accomplished being indisputable, and the question of moral obligation one upon which fair-minded persons cannot well differ. The purchasers of these bonds will be taken in law to be subject to the familiar rule which requires persons dealing with the acts of public officers to take notice of the limits of their authority. It is said in the petitions that these bonds were purchased in open market. The rule has been so frequently laid down that bonds issued without authority are void in the hands of an innocent purchaser that I think it by no means a hardship to require purchasers to take notice of this princi ple. Purchasers of bonds in open market know of this principle, and that they take the risk of the authority and power of public officials when they undertake to issue such obligations. It is not necessary to cite the numerous decisions of the supreme court which have made this principle familiar. There is no claim that the commissioners were guilty of misrepresentation or fraud. On the contrary, it is averred that they acted in good faith. It is not claimed that the commissioners refused to turn over the remnant of the fund and the real estate and building erected thereon to the purchasers of the bonds, or refused to account for the value of the property while insisting upon keeping it. Should they decline to surrender the property, a court of equity would compel its surrender. The act, upon its face, as applied to the claims of the plaintiffs, is clearly retroactive, and, in the judgment of the court, the claims of the plaintiffs are not founded upon any such strong moral and equitable rights as to deprive the law of its retrospective character within the terms of the constitution of the state. But it is argued that the legislature has determined this question, and we are cited to the decisions of the supreme court of the United States in which that court says that the question of moral obligation for which congress may give relief to claimants is one within its power, and rarely, if at all, subject to judicial review. U. S. v. Realty Co., 163 U. S. 427, 16 Sup. Ct. 1120, 41 L. Ed. 215; Guthrie Nat. Bank v. City of Guthrie, 173 U. S. 528, 19 Sup. Ct. 513, 43 L. Ed. 796. It must be remembered in this connection that the supreme court is dealing with the constitution of the United States, which contains no provision against the enactment of retrospective laws. In the cases cited that court is dealing with the powers of congress under the federal constitution. The decisions of the supreme court of Ohio in construing the Ohio constitution are binding upon the federal courts. Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 178; Claiborne Co. v. Brooks, 111 U. S. 400–410, 4 Sup. Ct. 489, 28 L. Ed. 470. It is true that the legislature in the act in question has undertaken to say that the obligations arising upon the claims of the plaintiffs are of an equitable and moral nature. As we understand the supreme court of Ohio, this determination, while entitled to respect, is not conclusive upon the courts. In

addition to the cases cited, see Board of Education v. State, 51 Ohio St. 531, 38 N. E. 614, in which the court says:

"We think, however, that whenever a contention arises between an individual and some public body respecting the existence of a claim against the latter, the controversy falls within the province of the judiciary. We do not deny the power of the general assembly to inquire into the merits of any claim when sought to be asserted through its agency, before granting relief to the claimant by legislative action. Not only has it such authority, but its exercise should be carefully and rigidly observed. Such investigation, subsequent determination, and resulting action, however, do not estop the parties from appealing to those judicial tribunals of the country that have been established under our constitution, and by it vested with the judicial power of the state, and by our laws provided with an appropriate procedure to conduct such inquiries. Cooley, Const. Lim. 115, and cases cited; 3 Am. & Eng. Enc. Law, 681."

We have, therefore, reached the conclusion that the declaration of the legislature as to the nature and character of this claim is not conclusive upon the courts when it becomes a matter of judicial inquiry. While we can see strong and sufficient grounds upon which the state might have taken this armory, and provided for the payment of these bonds, and like cogent reasons which would compel the restitution of the balance of the fund, and the turning over of the property acquired with the proceeds of these bonds to the bondholders, it does not appear that the compulsory purchase of the building and property in question appeals so strongly to the sense of justice and right that this statute can be upheld against the plain provision of the constitution prohibiting the enactment of retroactive laws in the state of Ohio. For the reasons herein stated, the demurrers will be sustained to both petitions.