Gorman, J.,
 

 dissenting. The provisions of the Ogrin Act (Section 2590-1, General Code, 116 Ohio Laws, 468) are so inextricably dependent iipon the validity of the so-called Whittemore Acts that if they are disassociated entirely, it is impossible to ascertain the true intent of the Legislature.
 

 The first Whittemore Act (115 Ohio Laws, 161) became effective April 5, .1933. It provided that a delinquent taxpayer, by paying all current taxes and agreeing to discharge the delinquent taxes in installments would be relieved of the payment of past penalties and interest. At each session of the Legislature the benefits of this act were extended by the enactment of legislation similar in form to the original statute effective April 5, 1933. See 115 Ohio Laws, Part 2, 228; 115 Ohio Laws, Part 2, 332; 116 Ohio
 
 *540
 
 Laws, Part 2, 14; 117 Ohio Laws,-, Am. Sub. S. B. 87 and Am. H. B. 828.
 

 The effect of these acts was to conditionally remit or abrogate tax penalties and interest. Consequently, since April 5, 1933, a delinquent taxpayer by paying his current taxes and entering into an agreement in reference to delinquencies could escape the payment of penalties, interest and other charges.
 

 But the provisions of these acts were not available to all taxpayers. Up until September 4, 1935, upon foreclosure of a mortgage of property all taxes and penalties had to be paid. There were likewise short periods of time when the acts were not effective. Consequently, there were times between April 5, 1933, and January 1, 1937, when the taxpayers were unable to comply with the provisions of the so-called Whittemore Acts. Accordingly payments of penalties and interest were made by some taxpayers since the law did not extend the benefits to everyone.
 

 The Ogrin Act merely provided that whenever any penalties or interest charges were paid, and an act of the Legislature remitted or abrogated penalties, that those who had made payments of penalties could obtain refunds. Such a measure clearly acts retroactively.
 

 There is no specific provision in the Federal Constitution which prohibits a state from enacting a retroactive law so long as vested rights are not impaired.
 
 League
 
 v.
 
 Texas,
 
 184 U. S., 156, 46 L. Ed., 478, 22 S. Ct., 475;
 
 Stockdale
 
 v.
 
 Atlantic Ins. Co.,
 
 87 U. S. (20 Wall.), 323, 22 L. Ed., 348;
 
 Brushaber
 
 v.
 
 Union Pacific Rd. Co.,
 
 240 U. S., 1, 60 L. Ed., 493, 36 S. Ct., 236;
 
 Tyee Realty Co.
 
 v.
 
 Anderson, Collector,
 
 240 U. S., 115, 60 L. Ed., 554, 36 S. Ct., 281;
 
 Lynch, Collector,
 
 v.
 
 Hornby,
 
 247 U. S., 339, 62 L. Ed., 1149, 38 S. Ct., 543;
 
 County of San Bernardino
 
 v.
 
 Industrial Accidlent Commission,
 
 217 Cal., 618, 20 P. (2d), 673;
 
 Bateman
 
 v.
 
 Sterrett,
 
 
 *541
 

 Trustee,
 
 201 N C., 59, 159 S. E., 14. This state, however, has a provision in its Constitution which forbids the passage of retroactive laws. Article II, Section 28, Ohio Constitution. There are only six other states which have similar provisions. ■ Article II, Section 11, Colorado Constitution; Article IV, Section 15, Louisiana Constitution; Article II, Section 15, Missouri Constitution; Part I, Article 23, New Hampshire Constitution; Article I, Section 20, Tennessee Constitution; Article I, Section 16, Texas Constitution; 11 American Jurisprudence, 1194, Section 366.
 

 The general principle is that all acts of a retroactive nature, despite specific constitutional provisions, are not invalid. As we shall see later where the object or effect of the act is to correct an innocent mistake, remedy a mischief, execute the intention of the parties and
 
 promote justice,
 
 then both as a matter of right and of public policy, laws with retrospective provisions have been sustained.
 

 The Ogrin Act as we said before is clearly retroactive in its nature, and the only question to determine is whether it is' to be included within some of the exceptions above mentioned.
 

 Authorities may be cited to the effect that attempts to tax retroactively have been frustrated by the constitutional provision.
 
 Miller
 
 v.
 
 Hixson, Treas.,
 
 64 Ohio St., 39, 59 N. E., 749;
 
 Safford, Supt. of Ins.,
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 119 Ohio St., 332, 164 N. E., 351;
 
 Smith
 
 v.
 
 Dirckx, Clerk,
 
 283 Mo., 188, 223 S. W., 104, 11 A. L. R., 510;
 
 State, ex rel. Koeln, Collector,
 
 v.
 
 Southwestern Bell Telephone Co.,
 
 316 Mo., 1008, 292 S. W., 1037. But see
 
 Succession of Stauffer,
 
 119 La.,. 66, 43 So., 928.
 

 The majority relies entirely in the support of its position upon the decision in
 
 Commissioners
 
 v.
 
 Rosche Bros., supra.
 
 The law before the court in that case attempted to refund taxes paid by certain persons in
 
 *542
 
 Hamilton county, and, since it did not operate generally throughout the state, violated the provisions of Article II, Section 26 of the Ohio Constitution. True, it was likewise held violative of Article II, Section 28 of the Ohio Constitution, but Judge Bradbury recognized that there was an exception to retroactive provisions when the act was passed in the furtherance of natural justice. At page 113 he said: “Counsel contend that the statute is in furtherance of natural justice, and that the clause of the Constitution under consideration does not prohibit retroactive laws of that character.
 
 Lewis, Trustee,
 
 v.
 
 McElvain,
 
 16 Ohio, 347;
 
 Trustees
 
 v.
 
 McCaughy,
 
 2 Ohio St., 152;
 
 Acheson
 
 v.
 
 Miller,
 
 2 Ohio St., 203;
 
 Burgett
 
 v.
 
 Norris,
 
 25 Ohio St., 308.
 

 “To uphold a statute on this ground where it seeks to create a liability upon a past transaction, when none existed when it occurred, if it can be done at all, the natural justice of the object sought to be accomplished should be indisputable. * # * Under these circumstances, the natural justice of requiring the taxpayers of Hamilton county to refund the entire sum is a question upon which minds may differ.”
 

 This' statement while recognizing to an extent moral claims not founded upon a legal obligation has been said to be too narrow in at least two cases.
 

 In Spitzig v.
 
 State, ex rel. Hile,
 
 119 Ohio St., 117, 120, 121, 162 N. E., 394, Judge Kinkade held that neither the constitutional provision nor the
 
 Bosche case
 
 would invalidate an act to pay a moral claim against the state arising out of a past transaction if the claim was not in dispute. See also,
 
 Board of Education
 
 v.
 
 State, ex rel. Lindsay,
 
 51 Ohio St., 531, 541, 38 N. E., 614, 46 Am. St. Rep., 588, 25 L. R. A., 770.
 

 If there was ever any doubt that a state could levy taxes to pay claims that created equitable and moral obligations arising out of past transactions I thought that was effectively put at rest by the able decision of
 
 *543
 
 the late Judge Severens, concurred in by Justice Harlan and Judge Thompson in
 
 New York Life Ins. Co.
 
 v.
 
 Board of Commrs. of Cuyahoga County, Ohio,
 
 106 F., 123.
 

 The facts in that case disclose that bonds' issued and sold to acquire a site for an armory were declared invalid in this court. The Legislature then adopted an act requiring Cuyahoga county to recognize and pay the holders of the bonds. The district court held the act void as retroactive on the authority of the
 
 Rosche case.
 
 See
 
 New York Life Ins. Co.
 
 v.
 
 Bd. of Commrs. of Cuyahoga County, Ohio,
 
 99 F., 846.
 

 Judge Severens disposed of this claim by saying: “It is not questioned that the Legislature of Ohio has, in some circumstances, at least, the power to recognize and provide for the discharge of obligations binding only in conscience and honor. This has always been admitted by the highest court of the state. In the nature of things', the moving facts must have already occurred. Otherwise, there could be no recognition or any estimate of the particular merits of the claim, or the measure of relief which justice would require. A statute of this kind, enacted for the purpose of providing for future transactions, would be an anomaly. To deny the power of recognition of a moral obligation because it rests upon past transactions is to deny it altogether. That such a statute is not obnoxious' to the prohibition of retroactive laws by the Constitution of Ohio has been so many times held by the Supreme Court of the state, sometimes by necessary implication, and sometimes in express terms, that we can have no doubt of its being the settled rule in the state.”
 

 In support of these views were cited
 
 State, ex rel. Anderson,
 
 v.
 
 Harris et al., Commrs.,
 
 17 Ohio St., 608;
 
 State, ex rel. Bates,
 
 v.
 
 Trustees of Richland Township,
 
 20 Ohio St., 362;
 
 Board of Education
 
 v.
 
 McLands
 
 
 *544
 

 borough,
 
 36 Ohio St., 227, 38 Am. Rep., 582;
 
 State
 
 v.
 
 Board of Education,
 
 38 Ohio St., 3.
 

 After distinguishing the
 
 Bosche case,
 
 the court said: “If the Legislature has power to recognize a moral obligation of the state, it has power to recognize a moral obligation of a county. Confessedly, there is no other depository of such power. The Legislature judges for it what moral obligations it should satisfy.
 
 * *
 
 * Beyond question, the Legislature may compel a county to pay a legal obligation. Upon the same authority, it may compel it to pay one which it is bound only in good conscience and honor to pay. It is inadmissible to revert to the proposition that the claim was originally invalid in point of law. That has become immaterial.”
 

 Despite anything to the contrary moral obligations of the state may be paid by the Legislature. In fact, the state never having permitted itself to be sued, all claims against the state partake of a pure moral nature. Only equity and good conscience on the part of the Legislature can decree satisfaction of any such claim.
 

 While a state may not retroactively tax individuals, there is no constitutional reason which prevents the Legislature from giving bounties or rewards for past services. As said by Judge Lurton when on the Supreme Court of Tennessee: “All release acts or resolutions settling, compromising, or releasing liabilities due to the State are in one sense retrospective, but there can be no doubt that a state may pass such retroactive laws as only waive her own right without violating* the Constitution. Black’s Constitutional Prohibitions, Sec. 221;
 
 Davis
 
 v.
 
 Dawes,
 
 4 Watts & S., 401;
 
 Lewis
 
 v.
 
 Turner,
 
 40 Ga., 416;
 
 Myers
 
 v.
 
 Byrne,
 
 19 Ark., 308.
 

 “That such a release act may have been unwise furnishes no reason for declaring it void. The policy of such legislation may be debatable, but the Legisla
 
 *545
 
 ture must settle all such questions under their responsibility to their constituents.”
 
 Demoville & Co.
 
 v.
 
 Davidson County,
 
 87 Tenn., 214, 223, 10 S. W., 353.
 

 The county cannot have any vested rights in any taxes already paid, if the state decides otherwise- by its Legislature. The county is but a wholly subordinate part of the state. See
 
 Cincinnati, W. & Z. Rd. Co.
 
 v.
 
 Commrs. of Clinton County,
 
 1 Ohio St., 77;
 
 Bd. of Commrs. of Portage County
 
 v.
 
 Gates,
 
 83 Ohio St., 19, 93 N. E., 255;
 
 State, ex rel. Doerfler, Pros. Atty.,
 
 v.
 
 Price, Atty. Genl.,
 
 101 Ohio St., 50, 128 N. E., 173. If the county has no rights other than those given it by the state, neither can a taxpayer of that county, who is the relator in this action. He can have no vested right if the county has none.
 

 Was there a moral obligation in existence prior to the adoption of the Ogrin Act?
 

 If the Whittemore Acts are constitutional we would have a situation where some of the taxpayers would not pay penalties or interest over a seven-year period, and yet those who were more diligent and had paid them could not recover the payments. Such legislation would reward the dilatory and punish those who were more prompt in payments.
 

 It is my opinion that the Whittemore Acts were passed for the sole purpose of facilitating the collection of taxes, and, being prospective in their operation and not retrospective, were clearly valid. See
 
 Jones
 
 v.
 
 Williams, Tax Collector,
 
 121 Tex., 94, 45 S. W. (2d), 130, 79 A. L. R., 983, and annotations 68 A. L. R., 431.
 

 If those acts are valid then a situation was created whereby taxpayers are not being treated equally. It would create a situation whereby special benefits were conferred upon delinquent taxpayers not equally available to non-delinquent taxpayers, and which this court
 
 *546
 
 condemned in
 
 State, ex rel. Hostetter,
 
 v.
 
 Hunt,
 
 132 Ohio St., 568, 9 N. E. (2d), 676.
 

 The Legislature had the power in equity and good conscience to correct such a situation, and order refunds if in its wisdom it saw fit.
 

 During the seven-year period we faced a depression which has not as yet ended. As early as March 21, 1932, Mr. Justice Brandéis said: “The people of the United States are now confronted with an emergency more serious than war. Misc.y is wide-spread, in a time, not of scarcity, but of over-abundance. The long-continued depression has brought unprecedented unemployment, a catastrophic fall in commodity prices and a volume of economic losses which threatens our financial institutions.” See
 
 New State Ice Co.
 
 v.
 
 Liebmarm,
 
 285 U. S., 262, 306, 76 L. Ed., 747, 769, 52 S. Ct., 371, 385. .
 

 Two years later on January 8, 1934, Chief Justice Hughes quoted with approval this statement of Justice Olson of Minnesota: “The present nation-wide and world-wide business and financial crisis has the same results as if it were caused by flood, earthquake, or disturbance in nature. It has deprived millions of persons in this nation of their employment and means of earning a living for themselves and their families; it has destroyed the value of and the income from all property on which thousands of people depended for a living; it actually has resulted in the loss of their homes by a number of our people and threatens to result in the loss of their homes by many other people in this state; it has resulted in such widespread want and suffering among our people that private, state and municipal agencies are unable to adequately relieve the want and suffering, and Congress has found it necessary to step in and attempt to remedy the situation by federal aid. Millions of the people’s money were and are yet tied up in closed banks and in busi
 
 *547
 
 ness enterprises.”
 
 Home Bldg. & Loan Assn.
 
 v.
 
 Blaisdell,
 
 290 U. S., 398, 423, 78 L. Ed., 413, 54 S. Ct., 231, 189 Minn., 437, 249 N. W., 340.
 

 The Legislature had a right to consider such conditions when it passed the Ogrin Act. It could consider the large number of closed banks where to date the average depositor in this state has lost approximately twenty per cent of his savings. It had a right to consider that many borrowed and paid interest to prevent further penalties from being exacted. It had a right to consider that those who either lost their homes or were forced to sell them were charged penalties. If we can say that, when the Legislature perceived the present delinquent taxpayers relieved of penalties in years in which others had paid them, it felt no moral obligation to recompense the latter class, I would have do disregard rather well defined ethical principles which I learned years ago.
 

 The penalties were assessed under legislative acts. These acts were neither covenants nor contracts with the counties or people. They could be amended or repealed by the Legislature so long as the rights of individuals were not invaded. It should be well settled, therefore, that, the constitutional inhibition against retroactive laws does not apply to legislation recognizing obligations of the state or any of its subordinate agencies with respect to past transactions, but is designed only to prevent retroactive legislation injuriously affecting individuals.
 
 State, ex rel. Corry,
 
 v.
 
 Hoffman,
 
 35 Ohio St., 435, 443;
 
 Commissioners of Union County
 
 v.
 
 Greene,
 
 40 Ohio St., 318, 321;
 
 Ohio, ex rel. Holtz,
 
 v.
 
 Commissioners,
 
 41 Ohio St., 423, 434;
 
 New Orleans
 
 v.
 
 Clark,
 
 95 U. S., 644, 24 L. Ed., 521.
 

 In attempting to refund the penalties paid the state is merely readjusting the burdens along the lines of equality and equity. That is a legitimate function of
 
 *548
 
 the state so long as justice to its citizens remains its' chief concern.
 

 It is said that the selection of the dates of payment between June 20, 1930, and January 1, 1937, makes the act discriminatory. Of course, those dates have a direct relation to the Whittemore Acts, and the same criticism could be leveled against them. Considering the existing economic conditions, the Legislature had a right to select such dates. An emergency does not, of course, create new legislative powers, but it does call into existence the exercise of powers.
 

 In conclusion, courts have said frequently and rather positively that no law should be declared invalid until its invalidity is proved beyond a reasonable doubt. In this the courts employ’ a term used more frequently in criminal than in civil cases. With great deference for the opinions of my colleagues, if I were sitting on a jury and the legislators were charged with a violation of the provisions of Article II, Section 28, when they adopted the Ogrin Act, as they stand here charged, I could not on this record before me find them guilty of that charge.