# G. E. SMITHIES *v.* D. L. CONKLING, TREASURER OF THE TERRITORY OF HAWAII.

SUBMISSION UPON AGREED STATEMENT OF FACTS.

ARGUED SEPTEMBER 18, 1911.          DECIDED SEPTEMBER 27, 1911.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

TERRITORIES—*legislative power of.*

A statute providing for the discharge of a moral obligation by means of an appropriation of public funds is rightful legislation within the meaning of the Organic Act.

STATUTES—*construction of—restricted meaning.*

Every reasonable view which may be taken of the language used in a statute should be resorted to in order to save the act from invalidity, and if it is capable of a restricted construction which would avoid conflict with the fundamental law that construction should be adopted.

SAME—*office of title and preamble.*

Neither the title of a statute, nor its preamble, may be used to control positive provisions in the body of the act, but may be resorted to where the language of the enactment is ambiguous and the intent doubtful.

SAME—*enactment of—three readings.*

Where a statute which originated in the house of representatives passed three readings in that branch of the legislature, and also in the senate where it was amended, it was not necessary, after the senate amendments had been concurred in by the house, to read the bill three times as amended.

SAME—*doubt or uncertainty as to legislative intent.*

Legislation is not to be nullified on the ground of uncertainty if it is susceptible of any reasonable construction that will support it.

SAME—*appropriations—inadequacy of fund.*

Under Act 143 of the Session Laws of 1911, claims should be paid in the order of their presentation till the fund is exhausted, the appropriation being insufficient to pay all the claims presented.

OPINION OF THE COURT BY ROBERTSON, C.J.

It appears from the agreed statement of facts in this case that during the period between June 14, 1900, and January 26, 1901, certain persons, firms and corporations (named in

the statement) paid to the treasurer of the Territory sums aggregating the total of $18,938.78 as and for annual merchandise license fees under and pursuant to the provisions of sections 1 to 7 and sections 75 to 79 of Act 64 of the Session Laws of 1896 (sections 690-696 and 764-768 of the Penal Laws, 1897) as amended by section 72 of the Organic Act; that pursuant to the provisions of Act 143 of the Session Laws of 1911, the plaintiff, as assignee of said persons, firms and corporations, on May 13 and 15, and June 1 and 20, 1911, presented to the defendant detailed statements, verified by oath, of the amount paid by each of them in accordance with the requirements of said act; that the defendant has verified such statements and is satisfied that none of the amounts so paid have been repaid to any one; that the plaintiff is ready and willing to file with the defendant proper receipts for said amounts upon payment thereof to him; that after June 20 and prior to July 1, 1911, certain other persons presented to the treasurer statements of the amounts aggregating $8,677.47, paid by them between June 14, 1900, and January 26, 1901, to the then treasurer as and for merchandise license fees, and that no part of such amounts has been repaid; and that sundry other persons also, after June 20, 1911, and prior to July 1, 1911, presented to the defendant statements of the amounts, aggregating $25,467.40, paid by them prior to June 14, 1900, to the then Minister of the Interior as and for like license fees under the aforesaid statute.

A controversy has arisen between the parties as to whether under the provisions of said Act 143 of the Laws of 1911 the defendant should pay the plaintiff the amounts claimed by him in full, in part, or at all.

The defendant attacks the validity of Act 143 on the following grounds: (1) That it conflicts with section forty-five of the Organic Act which requires that "each law shall embrace but one subject, which shall be expressed in its title;" (2) That it conflicts with section fifty-five of the Organic Act, in that it is not a "rightful subject of legislation;" (3) That it did not

"pass three readings in each house," as required by section forty-six of the Organic Act. The defendant also contends that even if the act is not open to any of those objections it is impossible to carry out its provisions because the amount of money appropriated is insufficient to pay even the claims for the license fees paid to the treasurer subsequent to June 14, 1900, the date upon which the Organic Act took effect, which amount to the sum of $27,616.25, and that, therefore, the act is inoperative.

Act 143 of the Laws of 1911 is as follows:

"An Act appropriating Twenty Thousand Dollars for the Purpose of Repaying Moneys Wrongfully Collected as Merchandise License Tax under Sections 764 to 768 of the Penal Laws of 1897.

"Whereas, certain persons, firms and corporations doing business in the Territory of Hawaii were required to and did pay into the Treasury of the Territory of Hawaii certain amounts as license tax imposed by Sections 764 to 768 of the Penal Laws of 1897, and

"Whereas, said Sections 764 to 768 of the Penal Laws were on January 26, 1901, declared by the Supreme Court of the Territory of Hawaii to be unconstitutional; Therefore,

"Be it Enacted by the Legislature of the Territory of Hawaii:

"Section 1. The sum of Twenty Thousand Dollars is hereby appropriated out of any money in the Treasury received from the general revenue, for the purpose of paying back the amounts collected as license tax under Sections 764 to 768 of the Penal Laws of 1897.

"Section 2. All persons, firms and corporations, or their executors, administrators, assignees or successors, as the case may be, shall within three months from the passage of this Act present to the Treasurer of the Territory of Hawaii, verified by oath, detailed statements of the amount or amounts paid by them in accordance with the requirements of Sections 764 to 768 of the Penal Laws of 1897, and the Treasurer of the Territory shall, after having verified such statements of the amounts so paid, and upon being satisfied that no part thereof has been repaid to such persons, firms or corporations, repay to such persons, firms or corporations, or their executors, administrators,

assignees or successors as the case may be, the amounts paid by them, and shall obtain and file proper receipts for such payments.

"Section 3. In case such statement as is required by Section 2 of this Act shall not be made and presented on or before the 30th day of June, A. D. 1911, such claim shall be forever barred.

"Section 4. This Act shall take effect upon its approval."

The legislature passed the act over the governor's veto.

Certain provisions contained in a general license act passed by the Legislature of the Republic of Hawaii, known as Act 64 of the Session Laws of 1896, and which were incorporated in the Penal Laws, 1897 (Secs. 764-768), required the payment of an annual license fee "to sell imported goods, wares and merchandise." In the case of *Lansing* v. *Theo. H. Davies & Co.,* 13 Haw. 286, decided by this court on January 26, 1901, it was held that those provisions of the statute were in conflict with sections 8 and 10 of article 1 of the Constitution of the United States, and they must be regarded as having been void from and after the date of the extension to these Islands of the Federal Constitution by the Organic Act. During the interval the Territory had continued to collect the license fees as provided for in the statute referred to.

We will first consider the second objection to the validity of the act under review. In this connection the defendant contends that the statute is not a rightful subject of legislation because it constitutes an attempt to divert public funds to private use without any legal or moral obligation, or any consideration of public policy to support it; that this is particularly true as to the license fees collected before the license law came into conflict with the Constitution, and is also true as to the fees collected thereafter, because, as it is said, those who paid the tax received benefits to the amount of the tax by increased sales or increased prices, and by the elimination of competition from others, who, but for the necessity of paying the tax, might have engaged in business. It is also argued that even if the

legislature could legally appropriate money for the repayment of the license fees collected after June 14, 1900, the present act cannot be allowed to stand because the appropriation is of a lump sum for the repayment of the license fees paid both before and since that date.

The contention is sound in so far as it relates to the inability of the legislature to legally make an appropriation for the refunding of such license fees as were collected before the license law became inoperative. It must be conceded that the legislature was without power to cause the repayment of those fees. We hold otherwise, however, as to the fees collected since June 14, 1900. Immediately upon the application to this Territory of the United States Constitution, persons had the right to import and sell merchandise without first obtaining a license so to do from the territorial treasurer. Those who paid the license tax after that date received nothing in return. Had they made the payments under protest they could have maintained actions to compel the return of their money. Under these circumstances there was ample ground for a finding, by the legislature, of a strong moral obligation on the part of the Territory to return the money thus illegally collected.

The point sought to be made that the act in question shows an intent to refund all license fees collected under the license law turns upon the proper construction to be given to the language of the act.

Unless the language of the statute is so positive and clear as not to permit of construction, it is our duty, in order to save the act from invalidity, to resort to every reasonable view which may be taken of the language used, and if it is capable of a restricted construction which would avoid conflict with the Organic Act that construction must be adopted. The presumption is that the legislature intended to do what it had a right to do and that it did not intend to do what it could not legally do.

While the title of a statute and its preamble are not, strictly speaking, parts of the statute, and though neither may be used

to extend, restrain, or control positive provisions in the body of the act, they may be resorted to where the language of the enactment is ambiguous and the intent doubtful. 2 Lewis' Sutherland, Stat. Con. Secs. 339, 341; *In re Contested Election,* 15 Haw. 323, 331; *Beard* v. *Rowan,* 9 Pet. 301, 317; *Coosaw Mining Co.* v. *South Carolina,* 144 U. S. 550, 563; *Price* v. *Forrest,* 173 U. S. 410, 427; *Knowlton* v. *Moore,* 178 U. S. 41, 65. The ambiguity referred to is not merely that arising from the meaning of particular words, but such as may arise, in respect to the general scope and meaning of a statute, when all of its provisions are examined. *Coosaw Mining Co.* v. *South Carolina,* supra.

The broad language of the first section of the act is indefinite. It is capable of the construction placed on it by counsel for the defendant. But when read in the light of the title and preamble it shows that the intention of the legislature was to provide for the repayment of only such license fees, as, by reason of the decision of this court on January 26, 1901, must have been illegally, and therefore wrongfully, collected.

A statute providing for the discharge of a moral obligation by means of an appropriation of public funds is unquestionably "rightful legislation" within the meaning of the Organic Act.

The first objection raised against the statute, that its subject is not expressed in its title, is disposed of by the view we have taken of the second objection. Construing the body of the act as we hold it should be construed, there is no variance or inconsistency between body and title. The subject of the act is that which the title expresses.

The next point urged is that the act in question did not pass three readings in each branch of the legislature. This point is based on the contention that the original bill having passed the house of representatives, the title was amended in the senate without vote or action by the senate itself, and that after its amendment it was not read three times in the house upon its

return there. Assuming that this court may examine the legislative journals to ascertain whether a statute did in fact pass three readings in each branch of the legislature as required by section 46 of the Organic Act, it will suffice to say that an examination of the senate journal does not sustain the contention made as to the amendment to the title of the bill in the senate. After the amendment of the bill and its return to the house, the amendments having been concurred in, it was not necessary to read the bill as so amended three times.

The final contention is that in any event the statute is impossible of execution and therefore inoperative and void. The argument is based on the fact that the sum appropriated is insufficient to pay all the claims in full, and there is no express provision in the statute providing for the contingency which has arisen. That all the claims should be paid in full would certainly be the proper construction to put upon the act if sufficient funds had been appropriated, notwithstanding that the act does not expressly so state. That no express provision was made for prorating the amount appropriated or for paying claims according to priority of presentment in the event of the appropriation being insufficient to pay all the claims is not, we think, sufficient reason for holding the act to be wholly inoperative. The statute does not say that the money shall not be disbursed, or that none of the claims shall be paid unless all are paid in full. The language of the statute is ambiguous. Construction becomes necessary. Legislation is not to be nullified on the ground of uncertainty if it is susceptible of any reasonable construction that will support it. Mere difficulty in ascertaining the meaning of a statute, or the fact that it is capable of different interpretations will not render it nugatory. 26 Am. & Eng. Enc. Law (2nd Ed.) 657; 1 Lewis' Sutherland, Stat. Con. Sec. 86. "In construing statutes the proper course is to start out and follow the true intent of the legislature and to adopt the sense which harmonizes best with the context and promotes in the fullest manner the apparent policy and objects

of the legislature." *Manhattan Co.* v. *Kaldenberg,* 165 N. Y. 1, 7.

The majority is unable to find in the language of the act any support for the view that it was intended by the legislature that in the event of the appropriation proving insufficient the claimants should be paid pro rata. To decree a distribution pro rata would, in their opinion, be judicial legislation. It is the intention of the legislature as made known by the language of the statute that must be sought and must prevail. The case is not free from difficulty; but, bearing in mind the rule that legislation is not to be nullified on the ground of uncertainty if it is susceptible of any reasonable construction that will support it, the majority is of the opinion that the act can be sustained upon the view that it directs payment of the claims in the order of their presentation until the appropriation is exhausted. The act was evidently passed in the belief that twenty thousand dollars would suffice for the reimbursement of all the claimants. Consistently with this belief the legislature, after authorizing all persons to present to the treasurer within a stated period of time detailed statements, verified by oath, of the amount paid by each under the unconstitutional license law, directed that "the treasurer of the Territory shall, after having verified such statements of the amounts so paid and upon being satisfied that no part thereof had been repaid to such persons, * * * repay to such persons * * * the amounts paid by them." The language thus used is capable of the construction that it became the duty of the treasurer to pay each claim upon its presentation, provided only that upon examination he found it to be correct and wholly unpaid. A direction for such payment upon presentation and in the order of presentation is what would naturally be expected of a legislature which desired to pay all the claims and believed that it was appropriating funds sufficient for the purpose. Distribution pro rata would necessarily involve a withholding of payment of every claim until the expiration of the prescribed period of limita-

tion in order to ascertain the amount payable to each claimant. The language of the act is, in the opinion of the majority, incapable of the construction that any such delay or computation was thereby authorized or intended.

The writer believes that the general intent of the legislature would be best subserved by following the course which, in his judgment, fairness and justice would dictate, and that is by holding that the money appropriated should be distributed pro rata toward the payment of all the valid claims. Plaintiff's counsel, in their brief, admit that "there is nothing in the act indicating that claims are to be paid in the order of filing, and in fact a certain date is set up to which time apparently all claims filed were to be regarded equally. The legislature had the power to pay the claims in whole or in part, and not having appropriated sufficient money to pay all in full it follows that the intention must have been to pay them in part." And the general rule seems to be that claims of the same rank share ratably if the fund out of which they are to be paid is inadequate to satisfy all. 36 Cyc. 890; *State* v. *Burke,* 37 La. Ann. 434.

Judgment may be entered for the plaintiff for the full amount of his claims.

*A. A. Wilder* and *A. L. C. Atkinson* (*Thompson, Wilder, Watson & Lymer* and *A. L. C. Atkinson* on the brief) for plaintiff.

*E. W. Sutton, Deputy Attorney-General* (*Alexander Lindsay, Jr., Attorney-General,* with him on the brief) for defendant.