IN THE MATTER OF THE APPEAL OF SEBASTIAN MONIZ TAVARES FROM THE RULING OF THE AUDITOR OF THE TERRITORY OF HAWAII.

No. 1276.

ARGUED JUNE 16, 1921.                    DECIDED JUNE 23, 1921.

COKE, C. J., KEMP AND EDINGS, JJ.

TERRITORY—*legislative power.*

An appropriation of public money by the legislature for the purpose of refunding to a purchaser a portion of the purchase price of public lands on the assumption that the land was appraised too high is an attempt to review and revise a lawful act of a coordinate branch of the government and is not a rightful subject of legislation.

SAME—*same.*

In order to support an act appropriating public money for the benefit of an individual in the absence of a legal obligation there must be at least a moral or equitable obligation owing by the public to the individual for whose benefit the appropriation is made.

OPINION OF THE JUSTICES BY KEMP, J.

This is an appeal from a ruling of the auditor of the Territory of Hawaii refusing to issue a warrant upon the

treasury to pay the claim of Sebastian Moniz Tavares for the sum of $440. This sum the appellant claims is due him under Act 211 S. L. 1919, which provides as follows:

"Section 1. The sum of four hundred and forty dollars ($440.00) is hereby appropriated to be paid out of any moneys in the treasury of the Territory to pay the claim of Sebastian Moniz Tavares, of Kula, Maui, for amount overpaid, upon readjustment of the appraised value of the lots in the Alae 3 and 4 homestead tract; he the said Sebastian Moniz Tavares being the holder of lot 1 containing 22 acres which was first appraised at $30.00 per acre and later reappraised at $10.00 per acre.

"Section 2. The auditor shall not issue warrant in payment of the above amount unless receipt in full is filed therefor, and the same is approved by the commissioner of public lands."

The circumstances leading up to the passage of the foregoing act are contained in the correspondence between the attorneys for the claimant and the auditor of the Territory relative to the issuance of the warrant provided for by said act. The auditor in refusing to issue the warrant said:

"I beg to acknowledge the receipt of your favor of the 27th ultimo, relative to an appropriation for the relief of Sebastian Moniz Tavares, as provided by Act 211, S. L. 1919.

"It appears from the record that lot No. 1, Alae 3 & 4 Homestead Tract, was duly appraised and advertised for sale pursuant to law. The record further shows that Mr. Tavares on July 1, 1912, applied for this lot, obtaining it under Cash Freehold Agreement No. 12, and after proving up his title, Patent No. 6529, dated March 31, 1916, was issued to him.

"Mr. Tavares has never so far as the record shows, made any objection to the original appraisement and had paid the same without any request for a reappraisal or reduction in price.

"I beg to say and so advise you, that the Commission-

er of Public Lands is without authority to order a reappraisal of patented homestead lands.

"You are therefore advised, that the claim of Sebastian Moniz Tavares is hereby disallowed."

In reply the appellant, through his attorneys, set forth his claim as follows:

"We beg to acknowledge receipt this day of your communication of the 3rd instant, relative to the demand of Sebastian Moniz Tavares as provided by Act 211 Session Laws 1919 (being House Bill No. 90).

"Allow us to call your attention to the fact that in March, 1917, W. O. Aiken, sub-agent of the fourth land district requested of the land commissioner a readjustment of value on lots remaining unsold because of difficulty in disposing of the same due to a high appraisement. On March 8th, 1917, the land commissioner ordered a reappraisal of any lots needing adjustment and sent Mr. George Copp to act with Mr. Aiken to report on reappraisements. On March 15th, 1917, Messrs. W. O. Aiken and George Copp filed a report with the land commissioner reappraising lots in the tract in question and undoubtedly for the purpose of comparison with the new appraisal on lots then unsold, included among others an appraisal of the lot theretofore patented to Sebastian Moniz Tavares. The former appraisal had set a value of $30. an acre on these lands whereas the appraisal of March 15th, 1917, placed a value of $10. an acre. Inasmuch as Mr. Tavares had paid $660. for his lot under the former appraisal and the new appraisal for lots in the same tract were reduced 2/3 of the former price by bona fide action on the part of the office of the land commissioner showing that the real value of Mr. Tavares' lot was only $220. a claim was filed in due course with the legislature of the Territory for an equitable readjustment as to this claimant. Both the house journal and the senate journal for the 1919 session show that the matter of the moral and equitable claim of Mr. Tavares was thoroughly investigated by appropriate committees of the legislature and a refund allowed without a dissenting vote in either house of the legislature. The same claim was approved by the governor in Act 211.

"In view of these facts we are compelled to take exception to your ruling and to transmit to you herewith an appeal on behalf of Mr. Tavares to the justices of the supreme court."

It is the claim of the appellant that there is a moral and equitable obligation resting upon the Territory to refund to him the difference between the two appraisements as set forth in the correspondence which we have quoted while the auditor contends that there is no such obligation, that the refund is a mere gratuity and therefore not a proper subject of legislation. The legislative power was conferred by Congress (Sec. 55 Organic Act) upon the territorial legislature in broad and liberal terms (*In re Craig*, 20 Haw. 483, 490). Under such a grant of legislative power it is proper for the territorial legislature to appropriate any moneys in the public treasury to discharge the moral and equitable obligations of the Territory (*United States* v. *Realty Co.*, 163 U. S. 427). But in the absence of a legal obligation to make such a payment there must be at least a moral or equitable obligation to do so otherwise the payment would not be for a public purpose but a mere gratuity and beyond the power of the legislature to make (*Bailey* v. *Philadelphia*, 167 Pa. 569, 573).

It being conceded that there was no legal obligation resting upon the Territory to refund to the appellant any part of the amount paid by him for the land in question it must appear that there was a moral or equitable obligation to do so or the appropriating act must fall. Was there such an obligation? A moral obligation is defined as one "which cannot be enforced by action but which is binding on the party who incurs it in conscience and according to natural justice. It is that imperative duty which would be enforcible by law were it not for some positive rule which with a view to general benefit exempts

the party in that particular instance from legal liability."
(15 Am. & Eng. Enc. L. 716; *Bailey* v. *Philadelphia,*
*supra.*) The facts leading up to the passage of the act
are sufficiently set forth in the correspondence already
quoted. Clearly the commissioner of public lands in
ordering a reappraisement of unsold lots did not contem-
plate a reappraisement of appellant's lot. He took no
action on the reappraisement designed to affect appel-
lant's purchase and it must be apparent that he was with-
out authority to do so. It must also be apparent that the
action of the appraisers in including the appellant's lot in
the reappraisement was without authority of law and had
no legal effect. · The transaction between the appellant
and the government was closed prior to the reappraise-
ment and the rights of the parties fixed. There are no
facts disclosed which in the slightest degree tend to show
any overreaching of the appellant by any territorial official
or the exercise of any influence over him by any one of
such officials. Everything leading up to the sale to the
appellant of the land in question was done in strict
accordance with the law and the appellant voluntarily
purchased the land and paid for it after knowing all the
facts. Under these circumstances we have no hesitancy
in saying that no wrong was done the appellant which
could in the slightest degree tend to impose a moral obli-
gation upon the Territory to refund to him any portion
of the purchase price. The most that can be said of the
transaction is that the land was valued too high when
appraised prior to the sale and this we presume the
legislature found upon investigation to be the fact. This,
however, we do not regard as sufficient to impose a moral
obligation upon the Territory to refund to the purchaser
the excess.

The terms "moral obligation" and "equitable obliga-
tion" seem to be used interchangeably by the authorities

but if there is any difference in their meaning we think
the former is the more comprehensive term and having
concluded that the Territory was under no moral obliga-
tion to the appellant it necessarily follows that it was
under no equitable obligation to him.

There is another and broader principle of law which
we think applies to this case and leads us inevitably to
the conclusion that the legislature was without authority
to make the appropriation in question.   We refer to the
principle discussed by Chief Justice Robertson and made
the basis of his opinion in *In re Cummins,* 20 Haw. 518,
to the effect that the powers of our government are
divided into three departments—legislative, executive and
judicial—each of which in its own sphere is supreme.  By
section 73 of the Organic Act the office of commissioner
of public lands is created and the officer holding that
position invested with the management, control and sale
of the public lands of the Territory.   The fixing of the
price at which the lot in question should be appraised and
sold involved the exercise of the executive power which is
conferred by Congress upon the commissioner of public
lands.   The commissioner could, as he did in the case of
the unsold lots, order them reappraised, which action was
effectual to wipe out the former appraisement of those
lots, but after the sale of, and the issuance of a patent to,
the lot in question he was powerless by any action to
affect the rights of the parties to that transaction.   We
think it must follow that the appropriation of a sum of
money by the legislature for the avowed purpose of re-
funding a portion of the purchase price of those lands
which had been sold at a price fairly fixed by the execu-
tive department having authority to fix it is clearly an
attempt by the legislature to repudiate, overturn and set
aside the lawful act of a coordinate branch of the govern-
ment and to substitute its judgment for that of the

department upon which the law cast the duty of exercising its judgment.   If such a thing can be done under the circumstances of this case it could be done in the case of every sale of public land made by the commissioner which would be a recognition of the right of the legislature to review and revise the appraisement of public lands made by the commissioner and his subordinates not only before sales have been made but after sales have been completed and the public character of such lands extinguished.

In the case at bar the surrounding facts and circumstances are undisputed.   After indulging every possible presumption in favor of the validity of the action of the legislature the fact remains that the purchase price paid by appellant for the lot in question went into the public treasury several years ago and that the contract of sale in satisfaction of which he paid his money being valid and binding was and is conclusive on all branches of the government and no one of those branches can now say aught to the contrary.   Under these circumstances it cannot be successfully contended that there is any possible moral or equitable obligation owing by the public to the appellant in satisfaction of which public moneys may lawfully be appropriated and paid over to him.   However laudable may have been the motive which prompted the legislature to enact this statute to sustain its validity would be to ignore plain legal principles and to set a precedent which if followed would lead to disastrous consequences.   The act trenches upon the executive power and it constitutes an attempt to divert public funds to private use without any moral or equitable obligation or other consideration of public policy to support it.   It is not therefore a rightful subject of legislation.

The ruling of the auditor refusing to issue the warrant is therefore sustained.

*A. M. Cristy* for appellant.

*J. Lightfoot,* Acting Attorney General, for the Auditor.