Kinkade, J.
 

 George D. Hile, defendant in error, a taxpayer of Cuyahoga county, requested the prosecuting attorney to bring an action against the county auditor and one Joseph A. Spitzig, to prevent, by injunction, the payment by the county, out
 
 *118
 
 of the county treasury, to Spitzig, through the board of county commissioners, the sum of $12,500, as compensation to Spitzig for injuries received by him while serving as a juror in the Court of Common Pleas, by reason of the falling of a passenger elevator in the courthouse. The prosecuting attorney refused the request, and then this 'action was brought by Hile, as a taxpayer, to accomplish the end stated. The defendants demurred generally to the petition filed by Hile. The demurrers were sustained. Hile then filed an amended petition. The defendants again demurred, and the demurrers were again sustained. Hile not desiring to plead further, judgment was entered in favor of the defendants. Hile prosecuted error to the Court of Appeals. That court reversed the Court of Common Pleas, upon the sole ground that the act of the Legislature which authorized the board of county commissioners to make the disbursement was unconstitutional. Spitzig prosecuted error to this court, making the auditor, who had declined to appear as a plaintiff in error, one of the defendants in error.
 

 The facts in the case are not in dispute. We have here a single question of law, the constitutionality of the legislative act in question.
 

 Spitzig was duly called for service as a juror in the Court of Common Pleas, and was serving as such when he was seriously injured, without any negligence on his part in any way contributing thereto, by the falling of one of the passenger elevators in the courthouse, due to the fact that the elevator was out of order, or was carelessly and negligently managed by the operator in charge thereof. Spitzig first tried to recover a judgment in court, but was denied
 
 *119
 
 relief on the ground that there was no law authorizing the maintaining of the action against the county or the board' of county commissioners. Spitzig then applied to the Legislature to pass an act which would afford him relief for the injuries he had received. The Legislature, after due consideration, passed an act, of which the following is a copy:
 

 “Be it enacted by the General Assembly of the State of Ohio:
 

 “Section 1. That the board of county commissioners of Cuyahoga county be and it is hereby authorized and empowered to pay to Joseph A. Spitzig of Cleveland, Ohio, a sum of money not exceeding fifteen thousand ($15,000) dollars in settlement and accord of all damages incurred by said Joseph A. Spitzig for injuries sustained by him owing to the falling of a passenger elevator in the court house of Cuyahoga county, Ohio, in which elevator said Joseph A. Spitzig was a passenger, while attending court in said court house as a juror.” 112 Ohio Laws, 102.
 

 This act is set forth in full by Hile in his amended petition as is also the fact that Spitzig was a juror and was hurt in an-elevator, as stated, and that, purr suant to the act in question, the board of county commissioners had agreed with Spitzig to compromise and settle his claim for damages due, at the sum of $12,500, for which payment the county auditor would issue his warrant upon the treasurer, unless restrained by injunction of the court from so doing. The prayer of the amended petition.was for an injunction preventing the auditor from issuing his warrant, and for a decree of the court holding that the legislative enactment was unconstitutional. Hile
 
 *120
 
 contended that the act was unconstitutional on several grounds — that it violated the Constitution, in that it was a general act, and was not of uniform operation throughout the state; that it was retroactive, and therefore prohibited by the Constitution; that it conferred judicial powers on the board of county commissioners; that it authorized the disbursement of money from the county treasury, for payment of which no specific tax had been levied.
 

 One very important feature of this case should be kept in mind, and that is, that the Legislature found that the injury to Spitzig imposed a moral obligation in favor of Spitzig upon the state, the payment of which should be made through the county commissioners. The Legislature, it must be presumed, took the necessary steps to advise itself about the facts incident to the solicited legislation, and determined, as it determines the merits of any legislation submitted for its consideration, that any amount that was paid to Spitzig, not exceeding $15,000, would not more than compensate him for the injuries received, and therefore it authorized the county commissioners to settle the amount with Spitzig by agreement between them, limiting the maximum payment to $15,000. The claim having been settled for $12,500, the action of the Legislature stands as a finding by the Legislature that that sum represents only compensation, and is in no sense a gratuity extended by the county to Spitzig.
 

 We think the case is quite different from the tax case,
 
 Commissioners
 
 v.
 
 Rosche Bros.,
 
 50 Ohio St., 103, 33 N. E., 408, 19 L. R. A., 584, 40 Am St. Rep., 653, in which the court held that there was no moral obligation whatsoever to make the refunder sought.
 
 *121
 
 Judge Bradbury, who wrote the opinion in the above case, also wrote the opinion of this court in the case of
 
 Board of Education
 
 v.
 
 State,
 
 51 Ohio St., 531, 38 N. E., 614, 25 L. R. A., 770, 46 Am. St. Rep., 588, in which this court again held that there was no moral obligation resting upon a board of education to make th'e refunder sought, much less was there any legal obligation so to do; and, furthermore, the court held that the alleged facts incident to the claim presented to the Legislature as a basis for the special act legalizing the claim were in great dispute, and, in this state of the case, the court heíd a special act of of the Legislature in favor of the claimant was void and of no effect. Referring to the effect that an admitted moral obligation would have had upon the case, Judge Bradbury said, at page 541 (38 N. E., 617):
 

 “If, in the case under consideration, the relator has paid out money for the benefit of the respondent, for which, by some mistake, accident or error he has never received credit, it is morally bound to make it good and this moral obligation is sufficient to support the statute in question.”
 

 After citing many authorities, he further said:
 

 “Where, however, the facts, out of which a moral (or legal) obligation is claimed to arise, are disputed, the contention falls within the province of the courts, under the distribution of governmental powers prescribed by our Constitution.”
 

 This language fits precisely the case at bar. There is no dispute about the facts here, and, that being true, the Legislature found a moral obligation arose against the county, which the Legislature should take cognizance of, and cover by the special act passed in this case.
 

 
 *122
 
 There are many cases, in which special acts have been passed by the Legislature, providing for gratuities for citizens out of public funds, in recognition of meritorious and extraordinary service rendered in saving lives or property, or apprehending criminals : the Legislature finding that a moral obligation rested upon the state to thus cover the situation. Such special acts do not contravene any provision in either the state or Federal Constitution.
 

 We see no merit in the claim that this action may not be maintained because it relates to an event that occurred prior to the enactment of the law, or because no levy of tax was made to cover this particular claim. Manifestly, a special legislative enactment, authorizing the meeting of a moral obligation, must relate to a past, and not to a future, event; and it is also quite manifest that it would not be possible to levy a tax to cover a special obligation that was not in existence at the time the levy was made. It is not practicable for the county to specify every item of disbursement that is to be made from tax levies, and it is for this reason that the tax levies are made so as to furnish a general fund from which unknown meritorious disbursements may be made legally, as they arise.
 

 It is said that there is no moral claim here, for the reason that the position of Spitzig, when he received • his injuries, is no different from what it would have been if he had been injured while a traveler upon the public highway, by reason of a defect in the highway. We cannot concur in this view. Spitzig was where he was because he was obliged to be there, having been summoned as a juror by the court.
 
 *123
 
 Travelers upon the highway are there of their own volition.
 

 The inhibitions in the Constitution against the enactment of retroactive laws have no application in a case where the state acknowledges, through its Legislature, that a moral obligation on the part' of the state has arisen from facts, not in dispute, which calls upon the state to make reparation to one of its citizens for an injury inflicted' by the state. The state can have no vested right to do wrong, and must be credited by the courts at all times, in the absence of .clear and convincing evidence to the contrary, with a disposition to do right. It is unthinkable that a moral obligation, compensable in money, although not amounting to a legal obligation, can rest upon the state, and yet the state be powerless to make reparation by special act appropriating state funds, or by authorizing the proper appropriation of county funds, where the county is the active agent in producing the wrong out of which the moral obligation arises. Surely no litigation in court is needed where the facts are not in dispute, and the injured party is willing to accept what the Legislature and the board of county commissioners are willing to pay to meet the moral obligation and cover the injuries inflicted.
 

 As good an illustration of the principle involved here as can be given is found in the syllabus of the case of
 
 Board of Education
 
 v.
 
 McLandsborough,
 
 36 Ohio St., 227, 38 Am. Rep., 582:
 

 “Where public money in custody of a public officer of this state, and with the disbursement of which money he is charged by law, is stolen or otherwise lost without his fault, and the Legislature pass an
 
 *124
 
 act exonerating such, officer and his sureties from the payment of such money, and direct that a tax be levied in the territory upon which the loss must fall to meet the deficit, such act is not forbidden by the Constitution, state or federal.”
 

 It was said by this court in the opinion in that case that the loss of the money without fault on the part of the public officer presented no defense to an action for its recovery, citing
 
 State, to use of Wyandot County,
 
 v.
 
 Harper,
 
 6 Ohio St., 607, 67 Am. Dec., 363. The special act relieving the officer was upheld. Judgment of the Court of Appeals reversed, and that of the common pleas affirmed.
 

 Judgment reversed.
 

 Marshall, C. J., Day, Allen, Robinson, Jones and Matthias, JJ., concur.