EDNA S. KOIKE, SHOJI SEKIYA, YACHIYO BABA SEKIYA, JANYCE CHIYO MAEKAWA AND HELEN M. BABA *v.* BOARD OF WATER SUPPLY, CITY AND COUNTY OF HONOLULU.

No. 4081.

FEBRUARY 23, 1960.

TSUKIYAMA, C. J., MARUMOTO, CASSIDY, WIRTZ AND LEWIS, JJ.

The question for decision is whether the Legislature of the Territory of Hawaii exceeded its authority in enacting Acts 262, 263, 264 and 265 of the 29th Regular Session (1957)[1] by which specified sums were appropriated out of the revenues of defendant-appellant as maximum compensation to plaintiffs-appellees for property damages sustained as a result of a break in a water main belonging to and under the control of defendant, the actual amount of compensation to be determined "upon proof of damages established before the Circuit Court of the First (Judicial) Circuit."

Plaintiffs brought the present proceeding in the Circuit Court, First Circuit, to recover upon their claims as specified and sanctioned by the Acts. The complaint cited the Acts as authority for the actions at law therein contained and prayed for damages in the maximum amounts allowed.

---

[1]                                ACT 262

An Act Making an Appropriation to Compensate Edna S. Koike for Property Damages Sustained as a Result of a Broken Water Main on Tenth Avenue, City and County of Honolulu.
*Be it Enacted by the Legislature of the Territory of Hawaii:*

SECTION 1. There is hereby appropriated out of the revenues of the board of water supply of the city and county of Honolulu subject to Section 2 herein the sum of $4,600.00 to be paid to Edna S. Koike to compensate her for damages sustained to her business property and equipment located at 1403 Tenth Avenue, Honolulu, city and county of Honolulu as a result of a break in the water main fronting said premises.

SECTION 2. Notwithstanding any provisions of the law to the contrary, the foregoing sum or any lesser amount thereof is to be paid to Edna S. Koike upon proof of damages established before the Circuit Court of the First Judicial Circuit, provided that nothing herein contained shall authorize the commencement of any proceeding after the expiration of 2 years from the effective date of this Act.

SECTION 3. This Act shall take effect upon its approval.
(Approved June 4, 1957.) H.B. 777, Act 262.

The remaining Acts are all exactly the same in language as Act 262 set forth above except for the names of the beneficiaries, their addresses and the maximum amounts of damages and these are as set forth hereinafter:

Act 263: "Shoji Sekiya"; "1401 Tenth Avenue"; "$203.60."
Act 264: "Yachiyo Baba Sekiya and Janyce Chiyo Maekawa, owners of Kaimuki Market Building"; "1401 Tenth Avenue"; "$2,000.00."
Act 265: "Helen M. Baba"; "1403 Tenth Avenue"; "$5,600.00."

The court, finding the Acts valid, denied the Motion to Dismiss the Complaint.

The case comes here on interlocutory appeal from the Order Denying the Motion to Dismiss the Complaint. Defendant contends that the circuit court erred in denying its motion to dismiss, the ground of such motion being that the complaint failed to state a claim upon which relief can be granted, and assigns two specifications of error:

(1) The Acts upon which the complaint is based propose to grant special privileges to plaintiffs, in violation of Section 55 of the Organic Act, and

(2) The Acts upon which the complaint is based represent an invasion by the Legislature into the powers of the Judiciary.

In passing, as we must, on the question of the validity of the Acts in question, it is incumbent upon us to be mindful of fundamental and guiding principles to be applied. "While the judicial department of the government has the power and is under the duty, in proper cases, to declare laws unconstitutional, there can be no doubt at this day that laws duly passed by the legislature are to be deemed constitutional and valid unless the contrary clearly appears. All presumptions are in favor of constitutionality and validity. In cases of doubt, the doubts must be resolved in favor of constitutionality and validity. So, also, if the power exercised in the enactment of a law depends for its validity upon the existence of facts and circumstances, the presumption is that the necessary facts and circumstances did exist, until the contrary is clearly shown. With reference to all of these presumptions, favorable to constitutionality and validity, the burden is upon the person attacking the constitutionality of the law to show that the enactment cannot be supported as the exercise of any of the powers vested in the legislature or by

the existing facts and circumstances." *In re Mott-Smith,* 29 Haw. 343, 346.

Especially is this true where, as here, we are called upon to determine whether or not there has been an encroachment by the legislative branch of government upon functions normally considered reserved to the judiciary. Too often, courts in their zeal to safeguard their prerogatives overlook the pitfalls of their own trespass on legislative functions. Mr. Justice Stone, in *United States* v. *Butler,* 297 U.S. 1, at page 78, stated succinctly in his timely and thought-provoking AAA dissent, that "[The] the power of courts to declare a statute unconstitutional is subject to two guiding principles of decision which ought never to be absent from judicial consciousness. One is that courts are concerned only with the power to enact statutes, not with their wisdom. The other is that while unconstitutional exercise of power by the executive and legislative branches of the government is subject to judicial restraint, the only check upon our own exercise of power is our own sense of self-restraint. For the removal of unwise laws from the statute books appeal lies not to the courts but to the ballot and to the processes of democratic government." This doctrine of judicial self-restraint became the beacon by which the Supreme Court steered its way through the troubled waters of questioned legislation. "This restriction upon the judicial function, in passing on the constitutionality of statutes, is not artificial or irrational. A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford

reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function." *Carmichael* v. *Southern Coal Co.*, 301 U.S. 495, 510; *Cf.*, *Steward Machine Co.* v. *Davis*, 301 U.S. 548; *Coleman* v. *Miller*, 307 U.S. 433; *C. & S. Air Lines* v. *Waterman Corp.*, 333 U.S. 103.

Since this case involves an appeal from an interlocutory order of the circuit court all of the surrounding facts and circumstances have not been presented. The complaint herein (the facts set forth therein being admitted by the Motion to Dismiss) alleges only that the causes of action are brought under and by virtue of the Acts which are incorporated by reference into and made a part of the complaint.

The Acts before us are special enactments constituting legislative recognition of the claims of plaintiffs for property damages sustained as a result of a break occurring in the water main of defendant fronting their premises. No legal basis for this recognition is apparent. The purpose and effect of the Acts was to create an obligation upon the government to pay plaintiffs' claims where none existed before. The only basis for such legislative action is the recognition of a moral obligation. This is borne out by the contents of Senate Standing Committee Report No. 784.[2]

A moral obligation has been defined in this jurisdiction

---

[2]Senate Standing Committee Report 784, 29th Legislature; Oahu Select on H.B. Nos. 777, 779, 780 and 782.

The purposes of these bills are to compensate Edna S. Koike, Shoji Sekiya, Helen M. Baba, Yachiyo Baba Sekiya and Janyce Chiyo Maekawa for damages to their business properties resulting from the bursting of a water main fronting 1401 to 1403 Tenth Avenue, Honolulu, T. H., on or about February 29, 1956. The bills provide for an appropriation from the funds of the Board of Water Supply of the city and county of Honolulu. The Board of Water Supply is sympathetic towards the loss suffered by the property owners involved but is powerless under existing statutes to provide for just compensation. The loss sustained by the owners in the

as "* * * one 'which cannot be enforced by action but which is binding on the party who incurs it in conscience and according to natural justice.'" *In re Tavares,* 26 Haw. 101, 104.

The United States Supreme Court pictures it this way. "* * * The nation, speaking broadly, owes a 'debt' to an individual when his claim grows out of general principles of right and justice; when, in other words, it is based upon considerations of a moral or merely honorary nature, such as are binding on the conscience or the honor of an individual, although the debt could obtain no recognition in a court of law * * *." *United States* v. *Realty Co.,* 163 U.S. 427, 440.

The essence of a moral obligation is that it arises out of a state of facts appealing to a universal sense of justice and fairness, though, upon such facts no legally enforceable claim can be based. The State may be said to owe a moral debt to an individual when his claim grows out of the principles of right and justice. When it is of such a nature as to be binding on the conscience or honor of an individual, it may be said to be based upon considerations of a moral or honorary nature of which the State may take cognizance. *Hagler* v. *Small,* 307 Ill. 460, 138 N.E. 849; *People ex rel. Douglas* v. *Barrett,* 370 Ill. 464, 19 N.E. 2d 340.

It is generally recognized that a moral obligation is

---

instant case being entirely unanticipated, it should be a matter of legislative policy that the owners be relieved from personal loss.

The bills further recognize an existing moral obligation and provide a means of fulfilling that obligation by permitting the institution of proceedings in the circuit court of the first judicial circuit and leaving the determination of the amount of damages to the court.

Your Committee is in accord with the purpose of the foregoing bills and recommends that they do pass third reading in the amended forms attached hereto. Signed by all members of the Committee, excepting Sen. Kido, Tsukiyama, Lee, and Heen with reservations, and Sen. Long, who did not concur.

more than a mere desire to do charity or to appropriate money in acknowledgment of gratitude. It is an obligation which, though lacking any foundation cognizable in law, springs from a sense of justice and equity, that an honorable person would entertain, but not from a mere sense of doing benevolence or charity. *Fairfield* v. *Huntington*, 23 Ariz. 528, 205 Pac. 814; *Exempt Firemen's Benev. Fund* v. *Roome*, 93 N.Y. 313; *People* v. *Westchester County Nat. Bank*, 231 N.Y. 465, 132 N.E. 241.

The concept of liability based upon moral obligation is, except in the case of governmental liability, foreign to our law. It is not strange that such a doctrine should be accepted in the relations between the State and the individual. An individual is free to make a gift and also to recognize moral obligations, although it is axiomatic that he cannot be compelled to do so. But the State, because of the limitations of the public purpose doctrine, cannot make a gift. Thus the doctrine of moral obligation places the State on the same footing, in this respect, as the individual. It cannot be compelled to do so, but it is free, through appropriate legislation to satisfy that which it recognizes as its moral debt.

Whether a moral obligation exists in a particular situation is primarily a question of policy and ethics rather than one of law, and the legislature accordingly is vested with a broad discretion in determining what shall constitute a valid moral obligation, subject to judicial control only when its actions are a clear and palpable abuse of this discretion.

That the legislature intended to recognize a moral obligation by the passage of the Acts before us is readily apparent from the wording of the Acts and from the contents of Senate Standing Committee Report No. 784. The legislature is the keeper of the State's conscience. It and it alone determines where lies the State's moral duty.

"* * * The presumption is that the legislature intended to do what it had a right to do and that it did not intend to do what it could not legally do." *Smithies* v. *Conkling,* 20 Haw. 600, 604. The duty of the courts is restricted to the determination of the constitutionality of appropriations; which in practice amounts to this—the courts will give the determination of the legislature the benefit of any doubt. *In re Mott-Smith, supra; Gustafson* v. *Rhinow,* 144 Minn. 415, 175 N.W. 903; *Lehigh Valley R. R.* v. *Canal Board,* 204 N.Y. 471, 97 N.E. 964; *People* v. *Westchester County Nat. Bank, supra; Civic Federation* v. *Salt Lake County,* 22 Utah 6, 61 Pac. 222. Certainly, there is nothing in the record before us that raises the slightest supposition that the legislature was not acting in good faith or that it abused its discretion in finding the existence of a moral obligation here. Conversely, it cannot be said that the legislature acted unreasonably in concluding that honor, conscience and equity required that the government reimburse the plaintiffs for the damages sustained by them in the accident mentioned in the Acts.

We have long recognized the legislative propriety of enacting legislation for the discharge of a moral obligation. This Court stated in the *Mott-Smith* case, *supra:* "* * * Nevertheless it is clearly the law that the legislative branch of the government in appropriating moneys to be paid to individuals is not confined to the payment of debts for which the government is legally liable but may also authorize the payment of debts which, while not recognizable as such or enforceable in a court of law, are founded in equity and conscience and constitute a moral obligation. When the surrounding circumstances are such that an individual, a man of honor, would in the absence of legal liability deem himself required or justified by honor and conscience to pay a sum of money as a debt founded upon or supported by a moral obligation, in such

a case the legislature likewise may recognize the propriety of the payment and appropriate money therefor. Such an appropriation would be a rightful subject of legislation within the meaning of the Organic Act." (p. 348.) *Smithies* v. *Conkling, supra; In re Saludes,* 34 Haw. 79; cf., *In re Tavares, supra.* The legislative action taken here certainly meets all the tests of the majority of the decisions, including those above cited, defining the nature of a moral obligation commencing with the leading case of *Guilford* v. *Supervisors,* 13 N.Y. 143. *Cincinnati Soap Co.* v. *U.S.,* 301 U.S. 308; *Guthrie National Bank* v. *Guthrie,* 173 U.S. 528; *New York Life Ins. Co.* v. *Board of Commissioners,* 106 Fed. 123; *Dept. of Finance* v. *Dishman,* 298 Ky. 545, 183 S.W. 2d 540; *State* v. *Carter,* 30 Wyo. 22, 215 Pac. 477; *Woodall* v. *Darst,* 71 W.Va. 350, 77 S.E. 264; *Udall* v. *State Loan Board,* 35 Ariz. 1, 273 Pac. 721; *Mayor* v. *Wolcott,* 12 Del. Chan. Rep. 379, 112 Atl. 703; *Board* v. *Puckett,* 227 Ala. 374, 149 So. 850; *John E. Ballenger Const. Co.* v. *State Board,* 234 Ala. 377, 175 So. 387; *Spitzig* v. *State,* 119 Ohio St. 117, 162 N.E. 394.

Defendant, however, raises the novel question under its first specification of error, whether the Acts, upon which the complaint is based, are unconstitutional in that they attempt to confer a special privilege upon plaintiffs in violation of Section 55 of the Hawaiian Organic Act.

The language of Section 55 of the Organic Act relied on by defendant is "* * * but the Legislature shall not grant to any corporation, association, or individual any special or exclusive privilege, immunity, or franchise without the approval of Congress; * * *." Its contention is that the Acts are "an attempt by the Legislature to grant to plaintiffs" a special privilege, denied to the citizenry in general, "by relieving them of the necessity of filing notice of injuries, as required by § 152-21, R.L.H. 1955 and by having the validity of their claims determined by the Legislature,

without being required to prove negligence or any other legal liability of the defendant."

What constitutes a grant of "special or exclusive privilege" contrary to Section 55 of the Organic Act has not been determined in this jurisdiction.

Prohibition similar to that of Section 55 of the Organic Act is provided in most state constitutions in varied form. In some cases, the provision is in the form of a prohibition against special or local laws where a general law can be made applicable, or as sometimes expressed, where a general law could have been enacted, or that the operation of a general law shall not be suspended by the legislature for the benefit of individuals. Many state constitutions require that general laws have a uniform operation. 50 Am. Jur., *Statutes,* § 50, pp. 66, 69.

It is also stated that such a constitutional prohibition supplements the equal protection clause of the Fourteenth Amendment; prohibits class legislation which does not operate equally and uniformly on all members of the class brought within its operation, or on all persons coming naturally within the class; and prevents enlargement of the rights of one person or more in discrimination against the rights of others. 82 C.J.S., *Statutes,* § 158, p. 266.

However, the constitutional prohibition, in whatever form, generally has been held not to apply to acts authorizing settlement of a private claim against the State, based upon a moral obligation. 82 C.J.S., *Statutes,* § 158, p. 267; *Dennison* v. *State,* 215 Minn. 609, 11 N.W. 2d 151; *Dike* v. *State,* 38 Minn. 366, 38 N.W. 95; *Sanger* v. *City of Bridgeport,* 124 Conn. 183, 198 Atl. 746; *State* v. *Fletcher,* 168 Okla. 538, 34 P. 2d 595.

"In construing the meaning of the word 'privilege,' as used in the constitution, the maxim, *noscitur a sociis,* is applicable. The prohibition is against granting special or exclusive 'privileges, immunities, or fran-

chises.' The three terms are evidently all intended to refer to things of the same or similar general nature. An 'immunity' has been defined as an exemption from any charge, duty, office, tax, or imposition; a 'franchise' has been defined to be a particular privilege conferred by the sovereign power of the state, and vested in individuals; and while it is not necessary, and would be perhaps unwise, to attempt to give a complete definition of any of these terms, yet it is evident that the word 'privilege,' as used in this connection, means, generally, a right or immunity granted to a person either against or beyond the course of the common or general law. The state's money is its own. It can give it or not, as it pleases. When it pays a debt or bestows a bounty, it always is for the special benefit of the recipient; but this is not the grant of a special privilege, within the meaning of the constitution. It may have been impolitic, by the passage of this act, to open the door for the revival of all the old claims of this kind which were disallowed by the commission under the act of 1881; but that was a matter exclusively for the consideration of the legislature." *Dike* v. *State, supra,* 38 Minn. 367, 368, 38 N.W. 95, 96.

The cases called to our attention by defendant are not helpful in resolving this question. They either involve a direct grant of monopoly (*Guthrie Daily Leader* v. *Cameron,* 3 Okla. 677, 41 Pac. 635) ; controversies affecting the rights of individual citizens (*State* v. *Industrial Accident Board,* 94 Mont. 386, 23 P. 2d 253; *Bagg's Appeal,* 43 Pa. 512 (1862) and *Louis* v. *Webb,* 3 Me. [Greenlf.] 326) ; direct interference with the exercise of judicial power (*State* v. *Lee,* 193 Ark. 270, 99 S.W. 2d 835; *Roles Shingle Co.* v. *Bergerson, et al.,* 142 Ore. 131, 19 P. 2d 94; and *Mendelson* v. *State,* 240 N.Y.S. 673, aff'd, 254 N.Y. 530, 173 N.E. 852) ; or special constitutional provisions (*Common-*

*wealth of Kentucky* v. *McCoun,* 313 S.W. 2d 585 [Ky. 1958]; *Szroka* v. *Northwestern Bell Telephone Co.,* 171 Minn. 57, 213 N.W. 557, but *cf., Dike* v. *State, supra,* and *Dennison* v. *State, supra.*)

In almost all cases where a special act has been invalidated, the question of moral obligation either has not been surveyed (*Jack* v. *State,* 183 Okla. 375, 82 P. 2d 1033, but *cf.,* strong dissent; *Duncan* v. *State Highway Commission,* 311 P. 2d 203 [Okla. 1957]) or the special act in question has not been determined as being predicated on a moral basis. If the discharge of a moral obligation by private legislation, as is recognized in this jurisdiction (*Smithies* v. *Conkling, supra; In re Mott-Smith, supra*) is justifiable in logic or reason, no other conclusion can be reached than to uphold such acts as being beyond the prohibition of special privilege. *Cf., Dennison* v. *State, supra; Dike* v. *State, supra.* The application of the constitutional prohibition against the granting of special privileges to the Acts before us would be totally inconsistent with the judicial recognition of moral obligation in this jurisdiction.

Defendant argues that it should not be difficult for the legislature to pass a general act covering situations such as is presented here. Regardless of whether this would be so or not, for obvious reasons the legislature should be free to salve the conscience of the government without the encumbrance of a constitutional restraint of special privilege. "For the court to hold that a general law must be passed, if any, under which all claims of a general class of this kind could be presented and paid would, we think, unduly interfere with the legislative discretion to determine what is and what is not, in its judgment, a moral, just and equitable obligation which demands payment at its hands. The Legislature might hesitate and refuse, to pass a general law of that kind, and to that extent change the general principle of non-liability of the State. It may,

however, be willing to give compensation in special cases, which demand special relief, and we are not warranted in holding that it cannot be permitted to do so in a case presenting facts like those in the case at bar." *State* v. *Carter*, 30 Wyo. 22, 41, 215 Pac. 477, 483.

The legislature having exercised its constitutional authority to impose on defendant a binding obligation, the decisive question, raised under the second specification of error, is whether it invaded the judicial province of the circuit court of the first circuit by directing the court to determine the monetary extent of the obligation and to give judgment accordingly.

In *Pope* v. *United States*, 323 U.S. 1, the Supreme Court sustained as valid a Special Act of Congress which directed the court of claims to render judgment at contract rates upon the petitioner's claim for additional excavation filling and concrete work under a construction contract with the government, which claim had been previously denied by the court of claims. There, as here, the defense was that the Special Act was invalid as being an encroachment by the legislative branch of government upon the judicial function of the court. In upholding the validity of the Special Act, the Supreme Court held:

"The Special Act did not purport to set aside the judgment or to require a new trial of the issues as to the validity of the claims which the court had resolved against petitioner * * * the Act's purpose and effect seem rather to have been to create a new obligation of the Government to pay petitioner's claims where no obligation existed before. And such being its effect, the Act's impact upon the performance by the Court of Claims of its judicial duties seems not to be any different than it would have been if petitioner's claims had not been previously adjudicated there.

"The power of Congress * * * is not restricted to

payment of those obligations which are legally binding on the Government. It extends to the creation of such obligations in recognition of claims which are merely moral or honorary. Congress, by the creation of a legal, in recognition of a moral obligation to pay petitioner's claims plainly did not encroach upon the judicial function which the Court of Claims had previously exercised in adjudicating that the obligation was not legal." (p. 9.)

The Special Act before the Supreme Court in the *Pope* case, *supra,* went further than the Acts before us in that it not only determined the question of liability but also fixed the criteria to be used in assessing the amount of damages. *Cf., Guthrie National Bank* v. *Guthrie, supra.*

Heavy, if not sole, reliance is placed by defendant in support of its contention upon *De Mello* v. *Auditor City and County,* 37 Haw. 415. That case holds that a legislature has no authority or power to pass judgment upon disputed facts underlying an unliquidated obligation of a State or municipality to which a claim for damages is directed and none to enter a legislative adjudication of the controversy therein; but, that its power to require the payment of any governmental obligation, whether legal or moral, is limited to a claim where such obligation is liquidated and founded on admitted facts. These conclusions were reached by the court's strict and literal application of "the fundamental doctrine of American law regarding the independence of the three great branches of government" in stating that "This constitutional limitation requires that the legislature respect the prerogatives of the other two branches and not usurp their functions, the courts having the duty to protect those branches from legislative inroads into their spheres of action. (*Harris* v. *Cooper,* 14 Haw. 145; *In re Cummins,* 20 Haw. 518; *In re Tavares,* 26 Haw. 101.) The independence of the judicial

branch of the Territory in the exclusive exercise of its power of government, inviolate from invasion by the legislative branch, is thus the criterion upon which the issue before this court must be determined." (p. 418.) Within the framework of the fundamental doctrine respecting the separation of powers of government, some flexibility must be infused. This was early recognized by the courts and constitutional authorities. *Union Bridge Co.* v. *United States,* 204 U.S. 364, 387; *Udall* v. *Severn,* 52 Ariz. 65, 79 P. 2d 347, 350; 1 Story, *Constitution of the United States* (4th Ed.) § 525, p. 380. "Thus, it is not a correct statement of the principle of the separation of powers to say that it prohibits absolutely the performance by one department of acts which, by their essential nature, belong to another. Rather, the correct statement is that a department may constitutionally exercise any power, whatever its essential nature, which has, by the Constitution, been delegated to it, but that it may not exercise powers not so constitutionally granted, which from their essential nature, do not fall within its division of governmental functions, unless such powers are properly incidental to the performance by it of its own appropriate functions." Willoughby, *Constitutional Law,* § 725, p. 682.

No one questions the right and power of the legislature to hold hearings for the purpose of eliciting facts so as to make a determination of appropriate legislative action. It does no more than that in the enactment of legislation recognizing moral obligations and necessarily so, since it alone possesses the power to grant such relief. *North Pacific Grain Growers* v. *United States,* 90 Ct. Cl. 189; *Love* v. *Lincoln County,* 165 Miss. 860, 147 So. 877. As stated above, the legislature is the keeper of the State's conscience. It alone possesses the means to salve that conscience. *Colbert* v. *State,* 86 Miss. 769, 39 So. 65; *State* v. *Thomason,* 142 Tenn. 527, 221 S.W. 491. "To no other

branch of the government than Congress could any application be successfully made on the part of the owners of such claims or debts (moral) for the payment thereof. Their recognition depends solely upon Congress, and whether it will recognize claims thus founded must be left to the discretion of that body." *United States* v. *Realty Co., supra,* p. 441. Certainly, the courts cannot be called upon to satisfy claims other than legal ones. *North Pacific Grain Growers* v. *United States, supra; Love* v. *Lincoln County, supra.*

It logically follows that since the legislative branch of the government has exclusive power to consider governmental moral obligations, in order to conscientiously carry out its responsibility, it must be able, without undue encroachment upon the judicial province, to incidentally consider and adjudge, to its own satisfaction, all facts and contentions underlying a claim, although the exercise of such incidental function may, because of its basic nature, be more properly considered as a judicial process. This, however, does not preclude the opportunity to judicially scrutinize the judgment of the legislature. But such judicial review is limited to the extent and for the purpose of determining whether or not there existed, in the light of all the facts and circumstances, a basis reasonably sufficient for the legislature to have recognized the claim as a judicially defined, moral obligation of the government. *Cf., United States* v. *Realty Co., supra; Cincinnati Soap Co.* v. *U.S., supra; In re Mott-Smith, supra.* "The power of the state to pass laws through its Legislature is the most important power it possesses, and one that should never be interfered with by the courts except when imperatively required by the fundamental law." *People* v. *Prendergast,* 202 N.Y. 188, 95 N.E. 715, 719. The balance between legislative determination and judicial review of claims involving moral obligations is succinctly expressed by

Justice Holmes in *Missouri, Kansas & Texas Ry. Co.* v. *May,* 194 U.S. 267, at p. 270: "* * * [it] It must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts."

Plaintiff urges that "there exists no question of a legal or moral obligation predicated on disputed facts 'in this case' as was the whole tenor of the De Mello case." We have no way of knowing whether the facts underlying these claims are in dispute or not. On the record now before us, the facts upon which the moral obligation depends appear to be undisputed and uncontroverted. Thus, while *De Mello* could be distinguished from the instant case on the facts, the principles and reasoning stated therein preclude such consideration.

While we may be sympathetic with the feelings of concern that undoubtedly prompted the decision in *De Mello, supra,* still the responsibility for imprudent and unwise legislation lies with the legislature alone. *State* v. *Thomason, supra.* Nor should this court be overly concerned about any necessary encroachment by the legislature upon judicial functions or over-zealous in preserving judicial prerogatives.

Accordingly, and with due deference, we are constrained to disagree with the foundation upon which *De Mello, supra,* rests and insofar as it is based on the rigid application of the doctrine of the separation of legislative and judicial powers, it is overruled. By this, we do not mean that we would necessarily disagree with the result reached in *De Mello, supra,* had the facts there been fully presented to the court after trial. Nor may we say what effect the provisions of the Constitution of the State of Hawaii will have, if any, on the powers of the legislative branch of our state government in the field under consideration.

It should be borne in mind that the *De Mello* case, as do the cases upon which it is based, reflects the philosophy of Judge Cooley in his "Constitutional Limitations" who sanctioned the doctrine that municipalities possessed inherent autonomy in respect to their local affairs. *Cf., Harris* v. *Com'rs. Allegany Co.,* 130 Md. 488, 100 Atl. 733; *Board of Education* v. *State,* 51 Ohio St. 531, 38 N.E. 614, cited by defendant. Thus, the problem was presented as an issue involving private interests to be resolved by the court in the same manner as an act of the legislature determining a debt between private individuals. This viewpoint, although recognized, represented the thinking of but a few jurisdictions. Today it can safely be stated that the overwhelming weight of authority recognizes the absolute control of the legislature over a municipality's local affairs as well as governmental functions, in the absence of specific constitutional limitations. *McKenzie* v. *Wilson,* 31 Haw. 216; *Guilford* v. *Supervisors,* 13 N.Y. 143; *In re Rooney,* 298 Mass. 430, 11 N.E. 2d 591; *Jersey City* v. *Martin,* 126 N.J. 353, 19 A. 2d 40; *State* v. *Board of Com'rs.,* 25 N.M. 338, 182 Pac. 865; *Bayley* v. *Inhabitants of Town of Wells,* 133 Me. 141, 174 Atl. 459; *Trenton* v. *New Jersey,* 262 U.S. 182; *Sanger* v. *Bridgeport, supra.* In the *McKenzie* case, *supra,* the court stated the prevailing rule as follows: "In the majority of American jurisdictions it is now held that in the absence of constitutional restrictions to the contrary the state which may create municipalities may also destroy them as a whole or may modify their organization and may add to or take away from their property and powers." (p. 233.)

Believing as we do that the *De Mello* case, *supra,* was a departure from well-established principles set forth in the *Mott-Smith* case, *supra,* also to the extent of this conflict, we overrule *De Mello, supra.* We not only have the right but are entrusted with a duty to examine the former

decisions of this court and when reconciliation is impossible, to discard our former errors. This is particularly true in decisions not involving property or vested rights and property interest. In the words of Mr. Justice Jackson *stare decisis* is a valuable principle and ought to be generally observed, but it is "not well served by failing to make explicit an overruling which is implicit in a later decision. * * * Of course, it is embarrassing to confess a blunder; it may prove more embarrassing to adhere to it." *United States* v. *Bryan,* 339 U.S. 323, 345-346.

It remains only to consider the other cases called to our attention by defendant as supporting its contention. These cases hold, upon judicial review, that no moral obligation could be considered to exist on the particular facts before the legislature, either under the broadest test applicable, (*In re Cummins, supra; In re Tavares, supra; Hoagland* v. *Sacramento,* 52 Cal. 142; *Harbold* v. *City of Reading,* 355 Pa. 253, 49 A. 2d 817) or by applying an unduly restrictive definition peculiar to a few jurisdictions. (*Board of Education of Calloway County, et al.* v. *Talbott,* 261 Ky. 66, 86 S.W. 2d 1059; *Cashman* v. *Sims,* 130 W.Va. 430, 43 S.E. 2d 805; *State, ex rel Bennett* v. *Sims,* 131 W.Va. 312, 48 S.E. 2d 13.) However, none of these cases dispute, and most of them directly uphold the basic principle that the determination of the existence of a moral obligation is, in the first instance, for the legislature, although, on final analysis, subject to review by the judiciary only for determination of whether there was an abuse of discretion.

Exercising the only restraint upon judicial power, our own self restraint, we conclude that, at this stage of the proceeding and under the facts in the record now before us which render the question of abuse of discretion by the legislature premature, the Acts cannot be declared to be invalid, as not constituting rightful subjects of legislation

under Section 55 of the Hawaiian Organic Act. Accordingly, the order denying the motion to dismiss the complaint is affirmed and the cause remanded for further proceedings.

*Stanley Ling,* Deputy City & County Attorney (*Norman K. Chung,* City & County Attorney, on opening and reply briefs; *Albert W. Evensen,* Deputy City & County Attorney, also on the reply brief) for defendant-appellant.

*George T. Nakamura* (also on the brief) for plaintiffs-appellees.